## STATE OF CONNECTICUT *v.* HENRY PRICE
### (13054)

PETERS, C. J., HEALEY, CALLAHAN, GLASS and HULL, Js.

Argued November 3—decision released December 29, 1987

*Sharon M. Elias* and *Amy L. Klein,* certified legal interns, with whom were *Michael R. Sheldon* and, on the brief, *Todd D. Fernow,* for the appellant (defendant).

*Leah Hawley,* deputy assistant state's attorney, for the appellee (state).

GLASS, J. After a trial to a jury, the defendant, Henry Price, was convicted of felony murder in violation of General Statutes § 53a-54c.[1] From this judgment the

---

[1] "[General Statutes] Sec. 53a-54c. FELONY MURDER. A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery, burglary, kidnapping, sexual assault in the first degree, sexual assault in the first degree with a firearm, sexual assault in the third degree, sexual assault in the third degree with a firearm, escape in the first degree, or escape in the second degree and, in the

defendant appeals, claiming that the trial court erred in its jury instructions concerning: (1) the strong corroboration element of § 53a-49 (b),[2] an essential ele-

course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants, except that in any prosecution under this section, in which the defendant was not the only participant in the underlying crime, it shall be an affirmative defense that the defendant: (A) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and (B) was not armed with a deadly weapon, or any dangerous instrument; and (C) had no reasonable ground to believe that any other participant was armed with such a weapon or instrument; and (D) had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury."

[2] "[General Statutes] Sec. 53a-49. CRIMINAL ATTEMPT: SUFFICIENCY OF CONDUCT; RENUNCIATION AS DEFENSE. (a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.

"(b) Conduct shall not be held to constitute a substantial step under subdivision (2) of subsection (a) unless it is strongly corroborative of the actor's criminal purpose. Without negating the sufficiency of other conduct, the following, if strongly corroborative of the actor's criminal purpose, shall not be held insufficient as a matter of law: (1) Lying in wait, searching for or following the contemplated victim of the crime; (2) enticing or seeking to entice the conemplated victim of the crime to go to the place contemplated for its commission; (3) reconnoitering the place contemplated for the commission of the crime; (4) unlawful entry of a structure, vehicle or enclosure in which it is contemplated that the crime will be committed; (5) possession of materials to be employed in the commission of the crime, which are specially designed for such unlawful use or which can serve no lawful purpose of the actor under the circumstances; (6) possession, collection or fabrication of materials to be employed in the commission of the crime, at or near the place contemplated for its commission, where such possession, collection or fabrication serves no lawful purpose of the actor under the circumstances; (7) soliciting an innocent agent to engage in conduct constituting an element of the crime.

"(c) When the actor's conduct would otherwise constitute an attempt under subsection (a), it shall be a defense that he abandoned his effort to commit the crime or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose."

ment of the attempted robbery theory of felony murder; and (2) the intent element of felony murder. We find no error.

The jury could reasonably have found the following facts: In the early evening of September 4, 1982, in the city of Hartford, the defendant along with Mishelle Reddick and Leroy Slater, had been riding in an automobile driven by John Betts. The defendant borrowed a gun from Slater. The defendant and Reddick were dropped off on Barbour Street at about 9 p.m. The defendant was purportedly looking either to buy some cocaine or to find someone who had sold him some "bad dope." At about the same time the victim and his girlfriend, Deborah Atkins, were walking along Barbour Street. As the two couples approached each other the victim began flashing a baggie containing silver packets and money. The defendant took the gun he had borrowed from Slater out from under his coat and put it to the victim's left temple and said something, perhaps "freeze" or "hands-up." The defendant searched the victim, and ordered Reddick to search Atkins. The gun went off, the victim fell to the ground and the defendant searched his pockets. He again ordered Reddick to search Atkins. Nothing was taken from Atkins during either search. The defendant then asked Atkins if she had ever seen him before, and when she said she had not, he and Reddick ran away. Atkins testified that she had not seen the defendant take anything from the victim.

Hartford police officers Tracey Williams and Frank Rudowitz were standing on Barbour Street about seventy-five yards from the scene when they heard a sound "like a firecracker." As they approached the location, they saw two people leaving the scene running westward across Barbour Street. One was a tall black male, and the other was "shorter" and "ran like a woman." At the scene the officers found a black male

in his twenties lying on the ground with blood spurting from his cheek. As the victim was being placed upon the ambulance stretcher, his right hand fell open, revealing a torn plastic baggie containing silver packets. Williams and Atkins accompanied the victim to the emergency room where he later died. At the hospital, Williams was given the victim's personal belongings—coins totaling $1.09, an identification card and some personal papers.

Pursuant to a warrant, the defendant was arrested on September 8, 1982, in his sister's apartment in Springfield, Masachusetts. On October 4, 1982, the defendant was indicted by a grand jury on one count each of the crimes of felony murder, in violation of General statutes §§ 53a-54c, 53a-54a (c), and murder, in violation of General Statutes 53a-54a. The felony murder charge was based upon the predicate crimes of robbery or attempted robbery. The defendant was convicted as charged.

I

The defendant first claims that the trial court's instructions to the jury violated his constitutional rights by relieving the state of its burden of proving an essential element of the offense of attempted robbery. Although the defendant took no exception to the instruction he now challenges, we will review his claim under the "exceptional circumstances" rule of *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973), because it "implicates the fundamental constitutional right that the state prove the guilt of an accused beyond a reasonable doubt." *State* v. *Miller,* 202 Conn. 463, 489–90, 522 A.2d 249 (1981); *In re Winship,* 397 U.S. 358, 361, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State* v. *Williams,* 199 Conn. 30, 34, 505 A.2d 699 (1986); *State* v. *Amarillo,* 198 Conn. 285, 299–300 n.9, 503 A.2d 146 (1986).

The gravamen of the defendant's constitutional attack is that the trial court's language regarding attempted robbery allowed the jury to dispense with the inquiry whether conduct that could be held to be a substantial step under General Statutes § 53a-49 (a) (2), is also strongly corroborative of the actor's criminal purpose. The defendant attacks the following language in the court's instruction: "Examples of conduct *which are strongly corroborative* of the actor's criminal purpose in a substantial step *are* . . . possession of materials to be employed in the commission of the crime . . . which can serve no lawful purpose of the actor under the circumstances . . . . " (Emphasis added.) The statute, however, reads as follows: "Conduct shall not be held to constitute a substantial step under subdivision (2) of subsection (a) *unless it is strongly corroborative* of the actor's criminal purpose. Without negating the sufficiency of other conduct, *the following, if strongly corroborative* of the actor's criminal purpose, shall not be held insufficient as a matter of law . . . ." (Emphasis added.) General Statutes § 53a-49 (b). Because the state concedes that this instruction was technically inaccurate, we need only address whether the error was harmful.

At the outset, we note that in examining the jury charge, we " 'must review the instructions as a whole . . . [and that] "individual instructions are not to be judged in artificial isolation from the overall charge." ' " *State* v. *Usry,* 205 Conn. 298, 314–15, 533 A.2d 212 (1987) " 'A phrase having a different meaning when culled from the charge will not be regarded as error when there is no "reasonable possibility" that the jury were misled.' *State* v. *Annunziato,* 169 Conn. 517, 532, 363 A.2d 1011 (1975); *Magnon* v. *Glickman,* 185 Conn. 234, 247, 440 A.2d 909 (1981)." *State* v. *Usry,* supra, 316. After reviewing the entire charge, we are convinced that the jury was adequately instructed on the elements of attempted robbery.

Although the use of the questioned language was erroneous, the trial court clearly explained the corroboration principle of attempted robbery both before and after the misstatement. Immediately following the challenged statements, the trial court instructed the jury that possession of materials, such as a gun, could constitute a substantial step "if you were to find that that is what the defendant did for the purpose of engaging in this crime." We find that the jury instructions " ' "[gave] the jurors a clear understanding of the elements of the crime charged, and [afforded] them proper guidance for their determination of whether those elements were present." ' " Id.

Furthermore, the likelihood that the jurors misperceived the instructions was attenuated by the strength of the state's case. The facts, which are set forth in greater detail above, indicate that the jury could have found beyond a reasonable doubt the defendant's guilt of the predicate offense of attempted robbery: The defendant acquired a gun less than one hour before the shooting. Upon encountering the victim, the defendant held the gun to the victim's head and fired the gun. Immediately thereafter the defendant searched the victim's pockets and ordered his companion to search the victim's girlfriend. Because these acts, in and of themselves, are strongly corroborative of the defendant's criminal purpose, it is not reasonably possible that the instruction complained of could have affected the jury's verdict.

## II

The defendant's second claim is that the trial court's instructions on criminal intent unconstitutionally invaded the province of the jury and relieved the state of its burden of proving that element beyond a reasonable doubt. Again, the defendant did not except to this portion of the charge at trial. As this portion of the

charge implicates the defendant's constitutional right to a fair trial, it is reviewable under *State* v. *Evans,* supra, as discussed above. We find no error.

The defendant claims that a portion of the charge regarding the inferences that may be drawn by the jury with respect to the evidence before them was improper, and objects to language such as the jury had a "duty to draw those inferences . . . if they are reasonable and logical inferences." He argues that the use of the words "reasonable and logical" permitted the jury to find intent by a standard lower than proof beyond a reasonable doubt. We first note that the trial court did not at any time instruct the jury on a standard of proof less than "beyond a reasonable doubt." Furthermore, following the challenged phrase, the trial judge properly instructed the jury that "in order for the accused to be found guilty of the charge of murder, you must find beyond a reasonable doubt that he had an intent to cause the death of [the victim]. If you do not find beyond a reasonable doubt that the accused had that intent, then he is not guilty of murder." We have recently held that "[i]n the course of a charge on drawing inferences . . . a court may correctly instruct a jury that it has the prerogative to draw inferences that are 'reasonable and logical.' Such an instruction, at least when qualified . . . by a caveat that both the ultimate inference of guilt and the facts essential to that inference must be proven beyond a reasonable doubt, does not dilute the constitutional standard of proof in a criminal case." *State* v. *Silano,* 204 Conn. 769, 773–74, 529 A.2d 1283 (1987); *State* v. *McDonough,* 205 Conn. 352, 533 A.2d 857 (1987). We find that the charge properly instructed the jury regarding the standard of proof.

The defendant next argues that this portion of the jury charge was erroneous because it directed the jury to find intent on the basis of a conclusive presumption.

The defendant objects to portions of the charge in which the following language was used: "[I]f there are inferences that you can draw from those facts to determine intention, you are entitled and it is your duty to draw those inferences . . . ." Despite the language regarding the jury's duty to draw inferences, we find that when the charge is read as a whole, the instructions made clear to the jury that it was their prerogative to draw inferences, but that they were not required to do so. We note that similar language was recently upheld in *State* v. *Silano,* supra, where the trial court instructed the jury that " 'you are asked to draw whatever inference or conclusion is reasonable and logical . . . . If it is reasonable and logical, you should draw it, but you don't have to.' " Id., 772. In this charge, the trial judge instructed the jury that it "should draw all fair and reasonable inferences from the facts and circumstances" and that it "may draw any reasonable inference from the facts proven." This language clearly indicates that the jury had the option to draw inferences from the defendant's conduct, but that it was not required to so do.

We find no error.

In this opinion the other justices concurred.