## STATE OF CONNECTICUT *v.* JOSE QUINTANA
### (13179)

PETERS, C. J., SHEA, CALLAHAN, COVELLO and HULL, Js.

Argued June 1—decision released September 6, 1988

*Joette Katz,* public defender, for the appellant (defendant).

*Susan C. Marks,* deputy assistant state's attorney, with whom, on the brief, were *Bradford Ward,* assistant state's attorney, *Harry Weller,* deputy assistant state's attorney, and *Peter Markle,* former assistant state's attorney, for the appellee (state).

COVELLO, J. Following a jury trial, the defendant, Jose Quintana, has appealed from a judgment of conviction of felony murder in violation of General Statutes § 53a-54c.[1] The defendant claims that: (1) his due

[1] General Statutes § 53a-54c provides in relevant part: "A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery . . . and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants . . . ."

process rights were violated by the state's failure to disclose the existence of criminal charges pending against a state's witness; (2) this nondisclosure contravened Practice Book § 744 and constituted reversible error; (3) the trial court's instructions to the jury allowed it to convict the defendant on theories of liability that were unsupported by the evidence; (4) the trial court erred in its instructions to the jury on the crime of attempt; (5) the trial court erred in its instructions to the jury on the law of self-defense and the duty to retreat; and (6) the trial court's instructions on self-defense allowed the jury to convict the defendant on a less than unanimous verdict, in violation of his rights under the Connecticut constitution.

The jury could reasonably have found that on the evening of March 11, 1986, the victim, Robert Chrisman, was stabbed in the chest on a sidewalk near his apartment in Waterbury. Police responding to a call reporting the incident found a silver-colored aluminum cigarette case and cigarette lighter on the sidewalk near the victim. The victim's fiance, who later identified his body, testified that she did not recognize the lighter and cigarette case as belonging to the victim and had never seen them in his possession. The police officers at the scene collected the lighter and cigarette case and brought them to police headquarters for forensic examination. Police experts later determined that fingerprints on both of these items were the defendant's.

The defendant's former girlfriend, Jeannette Berman, testified that in a conversation with her two days after the stabbing incident, the defendant admitted having stabbed the victim in self-defense in an altercation that, according to the defendant, had been initiated by the victim. She also identified the cigarette case and lighter that police had recovered from the crime scene as belonging to the defendant.

Berman further testified that, a few days after the murder, she picked up the defendant in her car at a prearranged meeting place pursuant to his instructions. As they drove around Waterbury, the defendant ordered her to pull over to pick up a friend of his whom he saw walking nearby. She identified the passenger as Gregorio Hernandez, and testified that the defendant and Hernandez subsequently carried on a conversation in Spanish in the back seat of her car while she drove.

Hernandez testified at the defendant's probable cause hearing and again at the trial that, during this back seat conversation, the defendant confided in Hernandez that he had killed Chrisman during an attempted robbery.

I

The defendant first claims that his due process rights were violated by the state's failure to disclose the existence of criminal charges pending against the witness Hernandez at the time of his trial testimony. We find no reversible error.

"In *Brady* v. *Maryland,* [373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963)], the United States Supreme Court stated that 'suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment . . . .' " *State* v. *Pollitt,* 205 Conn. 132, 141, 531 A.2d 125 ( 1987). The state acknowledges that such a request was made, by virtue of the defendant's motion for disclosure on May 7, 1986, requesting "all exculpatory information and material."

Hernandez testified at the defendant's probable cause hearing on May 14, 1986. At the time of his probable cause testimony, there were no charges pending

against Hernandez. On August 25, 1986, the state responded to the defendant's motion for disclosure and stated that it "possessed no obviously exculpatory information or material." The defendant's trial for felony murder began on January 28, 1987, and Hernandez testified again as a witness for the state, essentially reiterating the testimony he had given at the May 14, 1986 probable cause hearing. Criminal charges against Hernandez had arisen during the interval between the probable cause hearing and the defendant's criminal trial.[2] Thus, at the time of his trial testimony, Hernandez was a witness against whom nondisclosed criminal charges were pending.

The determination of whether the defendant's due process rights were violated by the states's nondisclosure of the charges pending against Hernandez at the time of his trial testimony turns on whether that information was material. In *United States* v. *Bagley*, 473 U.S. 667, 682, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985), the United States Supreme Court articulated the standard of materiality for disclosures mandated by *Brady:* " 'The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.' " See *State* v. *Pollitt,* supra, 142–43.

Applying this standard of materiality to the circumstances of this case, "we must determine whether there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *State* v. *Monteeth,* 208

---

[2] In January, 1987, at the time of his trial testimony, the following charges were pending against Hernandez: assault in the first degree in violation of General Statutes § 53a-59; threatening in violation of General Statutes § 53a-62; and larceny in the fourth degree in violation of General Statutes § 53a-125.

Conn. 202, 214–15, 544 A.2d 1199 (1988). We conclude that the nondisclosure of Hernandez' pending charges does not raise a reasonable probability that the outcome of the defendant's criminal trial would have been different. The crucial aspect of Hernandez' trial testimony, that the defendant had admitted the stabbing and attempted robbery of the victim, was a reiteration of the testimony Hernandez had presented at the probable cause hearing. The impeachment force of the evidence of the pending charges, i.e., that Hernandez might be induced to give testimony that would benefit his own interest in winning favor with the state, was undermined by the fact that he had presented entirely consistent testimony at the probable cause hearing when there were no such pending charges, and thus no potential inducements affecting the credibility of his statements. In our view, the trial testimony served largely to confirm and restate the evidence given at the probable cause hearing. Further, any perceived infirmities in the probative value of Hernandez' testimony because of the pending charges could easily have been cured by the rehabilitative effect of the introduction of the probable cause testimony as a prior consistent statement. *State* v. *Dolphin,* 178 Conn. 564, 571, 424 A.2d 266 (1979).

Had the pending charges against Hernandez been disclosed by the state, and had the defendant made use of the charges to discredit the witness, the jury could still reasonably have chosen to believe Hernandez on the basis of his earlier, consistent testimony given at the probable cause hearing. We deem the nondisclosure insufficient to have undermined confidence in the outcome of the proceedings, and therefore the information withheld was not "material" according to the test articulated in *Bagley.* We conclude that under the circumstances of this case, the nondisclosure of criminal

charges pending against the witness Hernandez at the time of his trial testimony did not deprive the defendant of due process of law.

## II

The defendant next claims that the state's nondisclosure of the charges against Hernandez violated Practice Book § 744, which provides in relevant part: "After a witness called by the state has testified on direct examination, the prosecuting authority shall disclose . . . any record of felony or misdemeanor charges pending against the witness known to the prosecuting authority." The defendant contends that the state's violation of § 744 entitles him to a new trial. We disagree.

As we have just determined, Hernandez' pending charges did not constitute "material" information within the meaning of *United States* v. *Bagley,* supra, and did not, therefore, rise to the level of a constitutional violation. There is no dispute that the required disclosure was not made and that, therefore, a violation of § 744 did occur. This violation is reviewable as plain error. Practice Book § 4185. While we hasten to emphasize that we do not condone the withholding of exculpatory information, it was the defendant's burden in this case to show the harmfulness of this nonconstitutional error. *State* v. *Gonzalez,* 197 Conn. 677, 681, 500 A.2d 1330 (1985). On the present record, we are not persuaded that the defendant has made the requisite showing of the harmfulness of this Practice Book violation. Consequently, he has failed to establish his entitlement to a new trial.

## III

The defendant next claims that the trial court's instructions on the charge of criminal attempt were erroneous in that they invited the jury to consider the-

ories of liability unsupported by the evidence. The charge of felony murder was based on a substitute information that claimed that the defendant had caused the death of the victim in the course of and in furtherance of the crime of attempted robbery.

In its instructions to the jury on the crime of attempt, the trial court, pursuant to General Statutes § 53a-49,[3] explained the statutory requirement that the defendant's conduct constitute a "substantial step" in furtherance of the commission of a crime. The court continued: "To be a substantial step, the conduct must be strongly corroborative of the defendant's criminal purpose. Examples are . . . . " The court then read to the jury the seven examples set forth in § 53a-49 (b) as examples of conduct that may be corroborative of the actor's criminal purpose.

---

[3] General Statutes § 53a-49 provides in relevant part: "(a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.

"(b) Conduct shall not be held to constitute a substantial step under subdivision (2) of subsection (a) unless it is strongly corroborative of the actor's criminal purpose. Without negating the sufficiency of other conduct, the following, if strongly corroborative of the actor's criminal purpose, shall not be held insufficient as a matter of law: (1) Lying in wait, searching for or following the contemplated victim of the crime; (2) enticing or seeking to entice the contemplated victim of the crime to go to the place contemplated for its commission; (3) reconnoitering the place contemplated for the commission of the crime; (4) unlawful entry of a structure, vehicle or enclosure in which it is contemplated that the crime will be committed; (5) possession of materials to be employed in the commission of the crime, which are specially designed for such unlawful use or which can serve no lawful purpose of the actor under the circumstances; (6) possession, collection or fabrication of materials to be employed in the commission of the crime, at or near the place contemplated for its commission, where such possession, collection or fabrication serves no lawful purpose of the actor under the circumstances; (7) soliciting an innocent agent to engage in conduct constituting an element of the crime."

The defendant challenges this instruction, claiming that by reading to the jury all seven examples of corroborative conduct contained in the statute when several of them lacked any basis in the evidence, the trial court impermissibly allowed the jury to consider statutory alternatives that were not supported by the evidence. The defendant also challenges this instruction on the ground that it deprived the jury of its factfinding role. The defendant contends that the statute requires the jury to determine whether, in the first instance, the conduct at issue was corroborative of the defendant's alleged criminal purpose. In this case, however, the trial court stated: "To be a substantial step, the conduct must be strongly corroborative of the defendant's criminal purpose. Examples are . . . ." The defendant claims that, by means of this language, the trial court directly and expressly instructed the jury that the examples that followed *were* instances of corroborative conduct, thus removing this issue from the jury's determination as to whether the acts of the defendant did, in fact, constitute corroborative conduct, and thus usurping the jury's role as factfinder. We disagree with both of these contentions.

A

As to the defendant's claim that the reading of all seven examples of corroborative conduct contained in § 53a-49 permitted the jury to convict the defendant on the basis of statutory alternatives unsupported by the evidence, our review of the trial court's instructions convinces us that this claim is without merit. Preceding the challenged language, the trial court instructed the jury that "[y]ou may not go outside the evidence to find the facts. This means that you may not resort to guesswork, conjecture or suspicion . . ." and that "[y]ou are to decide the case solely on the evidence received at trial." The court then continued its instructions by giving the statutory examples of conduct that

may be corroborative of a criminal purpose, and that thereby may constitute the substantial step that is required as an element of the crime of attempt. Immediately following the reading of these examples, the court advised the jury: "It is for you to determine, *on the evidence,* whether the defendant intentionally did anything which constituted a substantial step in a course of conduct which he planned to culminate in the commission of robbery . . . ." (Emphasis added.)

We agree with the state's position that the trial court offered these examples simply to illustrate types of conduct that may be legally sufficient to establish the requisite intent for the crime of attempt. The court followed these examples with an immediate reminder that the jury's determination must be based *"on the evidence."* (Emphasis added.) In our view, these instructions could not reasonably have misled the jury into assuming that they might properly convict the defendant on the basis of illustrative examples that were not grounded in the evidence. Reading the jury instructions as a whole; *State* v. *Price,* 205 Conn. 616, 620, 534 A.2d 1196 (1987); *State* v. *Usry,* 205 Conn. 298, 314–15, 533 A.2d 212 (1987); we conclude that it is not reasonably possible that the jury was misled into convicting the defendant of attempted robbery on the basis of facts not in evidence.

## B

The defendant's second challenge to the jury instructions is that the trial court's language regarding attempted robbery allowed the jury to dispense with the inquiry whether the defendant's conduct was corroborative of a criminal purpose under § 53a-49 (b). The state concedes that this portion of the charge was erroneous, but argues that the error was harmless. We agree.

Section 53a-49 sets forth examples of conduct which, *"if strongly corroborative,"* (emphasis added) may be legally sufficient to constitute the "substantial step" in furtherance of the commission of a crime required for a conviction for criminal attempt. The statutory scheme contemplates a jury determination as to whether the conduct at issue is indeed corroborative, as a necessary predicate for a finding of a substantial step. The defendant attacks the court's language, "[t]o be a substantial step, the conduct must be strongly corroborative of the defendant's criminal purpose. Examples are . . ." as declaring that the examples that followed are, as a matter of law, strongly corroborative, thereby impermissibly removing this issue from the jury's consideration.

In our recent review of similar jury instructions, we stated: "Although the use of the questioned language was erroneous, the trial court clearly explained the corroboration principle of attempted robbery both before and after the misstatement." *State* v. *Price,* supra, 621. Reviewing these instructions as a whole and in the context of the overall charge, we conclude that the jury was not reasonably misled. Id., 620–21; *State* v. *Usry,* supra, 314–15. The jury could reasonably have believed the testimony at trial that the defendant had himself described the stabbing as having occurred because of the victim's resistance to the robbery attempt. It is not reasonably possible that the jury would have, instead, speculated as to acts of the defendant never alleged nor proved by the evidence but merely presented as illustrative examples as part of the trial court's instruction, to find corroborative conduct to constitute the "substantial step" necessary for a verdict of guilty on the charge of attempted robbery.

## IV

The defendant's final claim involves a two-pronged challenge to the jury instructions regarding self-

defense. The defendant first points to the trial court's inaccurate rendition of General Statutes § 53a-19, which imposes a duty to retreat. The defendant also asserts that the self-defense instructions deprived him of his constitutional guarantee that the jury be unanimous in its verdict. We find no reversible error regarding the jury instructions on the issue of self-defense.

## A

General Statutes § 53a-19 sets out the defense of self-defense and defines the circumstances that justify the use of physical force.[4] In pertinent part, the statute provides that a person may be justified in using physical force in his own defense if that person reasonably

[4] "[General Statutes] Sec. 53a-19. USE OF PHYSICAL FORCE IN DEFENSE OF PERSON. (a) Except as provided in subsections (b) and (c) a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm.

"(b) Notwithstanding the provisions of subsection (a), a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety (1) by retreating, except that the actor shall not be required to retreat if he is in his dwelling, as defined in section 53a-100, or place of work and was not the initial aggressor, or if he is a peace officer or a private person assisting such peace officer at his direction, and acting pursuant to section 53a-22, or (2) by surrendering possession of property to a person asserting a claim of right thereto, or (3) by complying with a demand that he abstain from performing an act which he is not obliged to perform.

"(c) Notwithstanding the provisions of subsection (a), a person is not justified in using physical force when (1) with intent to cause physical injury or death to another person, he provokes the use of physical force by such other person, or (2) he is the initial aggressor, except that his use of physical force upon another person under such circumstances is justifiable if he withdraws from the encounter and effectively communicates to such other person his intent to do so, but such other person notwithstanding continues or threatens the use of physical force, or (3) the physical force involved was the product of a combat by agreement not specifically authorized by law."

believes that physical force is being used or will imminently be used against him. That justification is unavailing, however, if the person *"knows* that he can avoid the necessity of using such force with complete safety (1) by retreating . . . . " (Emphasis added.) General Statutes § 53a-19 (b). The trial court's instruction on this issue incorrectly stated that "in most circumstances, a person must retreat from the perceived harm *if he is able to do so* with complete safety." (Emphasis added.)

The defendant contends that in this portion of the charge, the trial court impermissibly replaced the subjective-objective standard contemplated by the statute with a simple objective standard. The statute requires *both* that a retreat in complete safety be available *and* that the defendant know of it. "The self-defense statute, i.e., General Statutes § 53a-19 . . . focuses on the person . . . claiming self-defense. It focuses on what *he* reasonably believes under the circumstances and presents a question of fact [as to whether a safe retreat was available and whether he knew of it]. . . . This statutory emphasis upon the defendant further demonstrates the function of the jury in their evaluation of the self-defense claim." (Emphasis in original.) *State* v. *Corchado,* 188 Conn. 653, 663, 453 A.2d 427 (1982). "[Section] 53a-19 (b) requires recourse to retreat in lieu of the use of physical force only when the actor himself 'knows that he can avoid the necessity of using such force with complete safety . . . . ' " *State* v. *Garrison,* 199 Conn. 383, 387, 507 A.2d 467 (1986). The state concedes that the instruction as given obviated the statutory requirement that the defendant have actual knowledge of his ability to retreat and was therefore erroneous. Nevertheless, we agree with the state that, under the circumstances of this case, the error was harmless.

"It is well established that individual jury instructions are not to be judged in artificial isolation, but must be viewed in the context of the overall charge." *State* v. *Palmer*, 206 Conn. 40, 46, 536 A.2d 936 (1988). "The charge must be considered from the standpoint of its effect on the jury in guiding them to a proper verdict." *State* v. *Corchado*, supra, 661; see *State* v. *Palmer*, supra, 46; *State* v. *McDonough*, 205 Conn. 352, 356, 533 A.2d 857 (1987), cert. denied, 485 U.S. 906, 108 S. Ct. 1079, 99 L. Ed. 2d 238 (1988).

Read as a whole, the trial court's instruction on self-defense, while not in strict accordance with § 53a-19 (b), "presented the case to the jury in a manner so that no injustice . . . result[ed]." *State* v. *DeJesus*, 194 Conn. 376, 391, 481 A.2d 1277 (1984).

The defendant, who did not testify at trial, presented the only evidence on the issue of self-defense through the testimony of Berman. She recited the defendant's version of the events, in which he had characterized the stabbing as an act of self-defense in response to an unprovoked attack by the victim. Hernandez, another witness, contradicted this evidence with his testimony that the defendant had admitted to him that he had stabbed the victim when he resisted the defendant's attempt to rob him. In this posture, then, the evidence presented to the jury can fairly be said to center on the credibility of Berman's self-defense version of the stabbing, measured against the credibility of Hernandez' testimony that an attempted robbery was the motivating force behind the stabbing. The jury's verdict can fairly be read to indicate a choice between these two inconsistent versions of the stabbing, a choice that accepted the version presented by Hernandez' testimony and rejected the self-defense version presented by Berman. See *State* v. *McDonough*, supra, 358–59. "The principal factual issues, therefore, were not classically dependent upon [the subtleties of the law of self-

defense] for their proof, as is true in cases where the principal factual issue is the . . . [defendant's subjective knowledge of the availability of safe escape]." (Citations ommitted.) Id.; see *State* v. *Mercer*, 208 Conn. 52, 73, 544 A.2d 611 (1988). We conclude that the trial court's erroneous instruction on self-defense did not, therefore, constitute reversible error in the circumstances of this case.

### B

The defendant's final challenge to the jury instructions on self-defense is that the instructions as given violated his state constitutional right to be convicted by the unanimous verdict of the jury.[5] The defendant points to the self-defense statute, § 53a-19, and its provisions that specify the circumstances in which the use of physical force is *not* justified. The court paraphrased the statute and instructed the jury as follows: "You must find the defendant not guilty on grounds of justification [of self-defense] unless the State has proved

---

[5] The constitution of Connecticut, article first, § 8, provides in relevant part: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel; to be informed of the nature and cause of the accusation; to be confronted by the witnesses against him; to have compulsory process to obtain witnesses in his behalf; to be released on bail upon sufficient security, except in capital offenses, where the proof is evident or the presumption great; and in all prosecutions by indictment or information, to a speedy, public trial by an impartial jury. No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law, nor shall excessive bail be required nor excessive fines imposed. No person shall be held to answer for any crime, punishable by death or life imprisonment, unless on a presentment or an indictment of a grand jury . . . ."

The constitution of Connecticut, article first, § 19, as amended, provides: "The right of trial by jury shall remain inviolate, the number of such jurors, which shall not be less than six, to be established by law; but no person shall, for a capital offense, be tried by a jury of less than twelve jurors without his consent. In all civil and criminal actions tried by a jury, the parties shall have the right to challenge jurors peremptorily, the number of such challenges to be established by law. The right to question each juror individually by counsel shall be inviolate."

beyond a reasonable doubt any one of the following elements: One, the defendant did not believe that he was in imminent danger of death, and that the use of force was not necessary to protect himself; or two, he did not have reasonable grounds for such belief; or, three, the force used was unreasonable; or, four, he was the initial provocateur or aggressor and did not attempt to withdraw; or, five, he was engaged in mutual combat not specifically authorized by law. That obviously does not apply in this case.

"So, the State must prove one of those four, as I gave them to you. And, if the State has proven *any one or more of these elements by evidence beyond a reasonable doubt, then the defendant was not justified.*" (Emphasis added.)

The defendant contends that by these instructions, the trial court permitted the jury to find that the state had defeated the defense of justification, without imposing on the jury the requirement that they unanimously agree as to which of the four means served to defeat the self-defense claim. The defendant asserts that this instruction violated his right to a unanimous jury verdict.

Despite the fact that the trial court's instructions may have been in error, our review of the record convinces us that the focal point of contention in the defendant's asserted self-defense claim was not the manner in which the defendant's use of force had been unjustified. Rather, the jury's determination of this issue involved, again, a question of credibility. The only evidence of self-defense came from Berman's testimony that the defendant had told her that he had been the target of an unprovoked attack by the victim. The state's witness, Hernandez, rebutted this position and claimed that the defendant had told him that he had "needed money to get high" and had stabbed the victim when

he refused to cooperate with the defendant's attempt to rob him. On the basis of this conflicting evidence, the jury was faced with the resolution of two inconsistent versions of the stabbing incident.

The court instructed the jury that "[i]n order for you to find the defendant guilty of felony murder . . . [you must find] that the defendant . . . committed or attempted to commit the crime of robbery." Viewed in light of this instruction, the verdict can reasonably be interpreted as the result of the jury's having rejected the self-defense version and having credited the attempted robbery version of the event. As such, the verdict suggests that there *was* agreement among the jurors concerning the defendant's conduct, i.e., that the killing occurred in the course of the defendant's robbery attempt, and that there was also agreement that his self-defense claim was without merit. We consider it highly unlikely, within the context of these evidentiary circumstances, that the jury was engaged in splitting hairs over which precise events had rendered the use of force unjustified. Rather, the jury rejected the self-defense scenario entirely, in favor of a finding that the fatal injuries were inflicted in the course of an attempted robbery.[6]

In reviewing an error in jury instructions, our task is to determine whether the asserted error in the trial court's charge to the jury affected the outcome of the trial and, consequently, deprived the defendant of a fair trial. *State* v. *Cooper,* 182 Conn. 207, 212, 438 A.2d 418 (1980). Where the error is of constitutional dimension, the test is whether it is reasonably possible that the jury was misled. *State* v. *Torrence,* 196 Conn. 430, 436, 493 A.2d 865 (1985).

---

[6] See generally 3 W. LaFave & J. Israel, Criminal Procedure (1984) § 23.7 (f), p. 50.

"We have often said that the charge should be read as a whole in determining whether it is reasonably possible that an erroneous instruction could have misled a jury . . . . 'It is well established . . . that individual instructions are not to be judged in artificial isolation from the overall charge. . . . The whole charge must be considered from the standpoint of its effect on the jury in guiding them to a proper verdict . . . and not critically dissected in a microscopic search for possible error. . . .' " (Citations omitted.) *State* v. *McDonough,* supra, 356.

"Here, there is no reasonable possibility that the defendant's jurors were incorrectly led to believe that they could return a guilty verdict without all reaching unanimous agreement on the conduct the defendant had committed." *State* v. *Benite,* 6 Conn. App. 667, 676–77, 507 A.2d 478 (1986). In the context of a charge of felony murder premised on the underlying crime of attempted robbery, the jury was free to reject the testimony regarding self-defense and to accept the testimony that related the defendant's admission that the stabbing had occurred during the commission of a robbery attempt. Further, the trial court expressly instructed the jury that its verdict must be unanimous.

Finally, "the defendant never asked that the jury be polled, when it returned its verdict, to clarify the basis on which the defendant was convicted . . . . See *State* v. *Carter,* 189 Conn. 611, 629, 458 A.2d 369 (1983)." *State* v. *Duhan,* 194 Conn. 347, 354, 481 A.2d 48 (1984). The defendant cannot now be heard to complain about a claimed ambiguity in the verdict when he took no steps at trial to resolve that perceived ambiguity. Id.

There is no error.

In this opinion the other justices concurred.