## STATE OF CONNECTICUT *v.* DENNY TATE
## (12270)

FOTI, LANDAU and FREEDMAN, Js.

Argued February 17—decision released June 7, 1994

*Christopher M. Cosgrove,* assistant public defender, for the appellant (defendant).

*John A. East III,* deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's

attorney, and *Rosita M. Creamer,* assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of assault in the first degree in violation of General Statutes § 53a-59 (a) (1).[1] The defendant claims that the trial court improperly instructed the jury on self-defense. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On August 9, 1991, at approximately 9:30 p.m., the victim, Clive Mowatt, entered a small pub in Hartford, sat down at the bar and ordered a beer. The defendant, whom the victim knew casually by first name only, was standing in the doorway when the victim entered. As the victim sat drinking his beer, the defendant approached him from behind, grabbed a gold chain from the victim's neck, and ran out of the rear door of the bar. The victim chased the fleeing defendant and caught up to him in the back parking lot and a struggle ensued. The defendant pulled a knife from his pocket and cut or slashed the victim a number of times before fleeing. The victim retrieved his broken chain from the ground. He then proceeded to a local hospital where thirty-seven stitches were required to suture his cuts. He is permanently scarred on his neck, chest and shoulder and suffers recurring pain in his neck.

I

The defendant claims that the trial court improperly refused to instruct as requested on the justification of self-defense.

[1] The jury returned a verdict of not guilty as to charges of robbery in the first degree in violation of General Statutes § 53a-134 (a) (3) and larceny in the second degree in violation of General Statutes § 53a-123 (a) (3).

The defendant testified at trial that the victim was a drug dealer from whom he had purchased drugs on credit several days earlier. The defendant claimed that when the victim entered the bar, he had threatened to shoot the defendant unless he paid him. The defendant knew that the victim routinely carried a gun. As a result of the threat, the defendant pulled the victim from the bar stool and "slammed him to the ground." The victim pulled out a gun and shot the defendant in the arm. The defendant then ran out the rear exit pursued by the victim and, during the ensuing struggle, slashed the victim with his knife. According to the defendant, the victim's gun malfunctioned and the victim placed it on top of a nearby car where it was picked up by a friend of the victim.[2]

The defendant filed fourteen proposed jury instructions, eight of which concerned self-defense. The defendant noted his exception to the court's failure to instruct as requested on his proposed charges numbered six and nine. Proposed instruction six dealt with the issue of the defendant's belief of imminent danger,[3] and instruction nine dealt with the issue of initial aggressor.[4]

---

[2] The defendant further testified that he was admitted to the hospital at approximately 5 a.m. He acknowledged telling the hospital staff that he had been in a fight only one-half hour earlier and denying that he had been shot. At trial, the defendant said that he had lied to the hospital staff because he did not want the police involved.

[3] The defendant's request to instruct number six provided: "While mere words do not furnish grounds for believing that danger to life is imminent, threats may lend color to acts that otherwise would appear unimportant. A previous threat, taken in connection with such a demonstration of force as will induce a well-founded belief in the mind of a reasonable person that his adversary is on the eve of executing the threat, and that his only means of escape from death or great bodily injury is immediately to defend himself against the impending danger, will justify him in the use of whatever force is necessary to avert the threatened peril; *State* v. *Corchado,* 188 Conn. 653, 663 [453 A.2d 427] (1982). Here, Mr. Mowatt had threatened Mr. Tate's life, and Tate knew Mowatt to carry a gun."

[4] The defendant's request to instruct number nine provided: " 'The fact that a person has invited the discussion of a subject as to which animus

The defendant argues that while he was entitled to an instruction on the justification of self-defense, and did receive such an instruction, it was not sufficient to stress the theme of his requests in appropriate language. He argues that the court in denying his requested charges denied him "his constitutional right to have his defense presented properly, and, in effect, made the jury's eventual decision to reject the self-defense claim an easy one." We do not agree.

The purpose of a jury instruction is "to give jurors a clear understanding of the elements of the crimes charged and to afford them proper guidance for their determination of whether those elements were present." *State* v. *Usry,* 205 Conn. 298, 316, 533 A.2d 212 (1987). In determining whether the trial court's instructions were adequate, we view the charge "as a whole to determine whether it is reasonably possible that the instruction misled the jury." *State* v. *Ortiz,* 217 Conn. 648, 667, 588 A.2d 127 (1991).

The trial court in a criminal proceeding is under no duty to charge in the identical language requested if

existed between the part[ies] or that he has demanded an explanation of offensive words or conduct or the settlement of a claim, or that a person has insulted another, *or even that he was the first to strike a blow, does not itself make him the aggressor.'* [Emphasis added.] *State* v. *Corchado,* 188 Conn. 653, 667 n.15, [453 A.2d 427 (1982)] quoting 1 Wharton, Criminal Law and Procedure, Section 229, pp. 501–502.

"Factual basis: Obviously, in this case, the first actual use of physical force in Bennett's Lounge was by the defendant upon Mr. Mowatt. However, that does not necessarily make him the initial aggressor in the subsequent cutting. There is evidence here that following Mr. Tate's use of force on Mr. Mowatt, Mr. Mowatt then shot Mr. Tate, at which point Mr. Tate attempted to leave. It was at this point that Mr. Mowatt chased after the defendant, caught him, and initiated his own second use of physical force (the first being the shooting), which eventually led to the defendant cutting him. The initial aggressor exception to justifiable force requires the state to prove beyond a reasonable doubt that Mr. Tate was *the* initial aggressor. However, there is evidence here that Mr. Mowatt made a threatening remark to the defendant before any force was used, and that Mr. Mowatt became the aggressor after Mr. Tate ran out of the bar." (Emphasis in original.)

its charge is accurate, adequate, and, in substance, properly includes material portions of the requested charge. *State* v. *Pinnock,* 220 Conn. 765, 789, 601 A.2d 521 (1992). The court's responsibility is performed when it instructs the jurors in a manner calculated to give them a clear understanding of the issues presented for their consideration, under the crimes charged and on the evidence, and when those instructions are suited to guide them in the determination of those issues. *State* v. *Watlington,* 216 Conn. 188, 199, 579 A.2d 490 (1990). The test is whether the charge as a whole presents the case to the jury so that no injustice will result; *State* v. *Campbell,* 225 Conn. 650, 661, 626 A.2d 287 (1993); and whether the court's instruction properly covered the substance of the written request. *State* v. *Allen,* 216 Conn. 367, 387, 579 A.2d 1066 (1990).

Our review of the charge as a whole[5] leads to the conclusion that there is no reasonable possibility that the

---

[5] The court's instruction stated, inter alia: "Now, the defendant has raised the issue of justification in this case, with regard to the two assault charges. A person is justified in the use of reasonable physical force upon someone else when he reasonably believes that such force is necessary to protect himself from the use, or impending use, of physical force by another. Reasonable force is that force which an average person of ordinary intelligence, in like circumstances, would judge to be necessary to prevent injury, and no more.

"You must find the defendant not guilty on the grounds of justification unless you find that the state has proved to you, beyond a reasonable doubt, any one of the following elements: First, that the defendant did not believe that he was in imminent danger of injury himself, and that the use of force was not necessary to protect himself. Or, that the defendant did not have reasonable grounds for that kind of a belief. Or, that the force he used was unreasonable. Or, that he was the initial aggressor, and did not attempt to withdraw. If the state has proven any one or more of those elements, by evidence, beyond a reasonable doubt, then the defendant was not justified. Otherwise, he was justified.

"Now, the danger, or apparent danger, claimed by the defendant is to be determined from his standpoint, at the time of the attack, and under all the existing circumstances. The act leading to the defendant's claim of self-defense need not be actual threat or an assault. The test is not what the other person actually intended, but what the aggressor's act caused

jury was misled. It is clear that the jury was adequately informed of the applicable law dealing both with the

the defendant to reasonably believe was his intention. In other words, the danger need not have been actual, if the defendant reasonably believed that the danger was actual, real, imminent, or unavoidable. In judging the danger to himself, the defendant was not required to act with infallible judgment.

"Ordinarily, one exercising the right of self-defense is required to act instantly, and without the time to deliberate or investigate. Under such circumstances, it is often possible to mistake an actual threat when none in fact existed. The law does not require the same coolness and judgment in estimating his danger. Note, however, that the defendant's belief of danger must be honest and sincere. Apparent danger, with the knowledge that no real danger exists, is not an excuse for using force. A defendant claiming justification of self-defense may only use reasonable force to defend himself. Reasonable force is the amount of force that would be used by an average person of ordinary intelligence acting under the same circumstances.

"In deciding whether the force used in this case was reasonable, you may examine such factors as the physical attributes of the parties involved. You've seen both of them here in the courtroom on the witness stand. Things such as their age, their height and their weight. A defendant claiming justification of self-defense is permitted to use deadly force in two broad circumstances. He may justifiably use deadly force only if he reasonably believed that the other person was either using, or about to use, deadly physical force, or inflicting, or about to inflict, great bodily harm. Our statutes define deadly physical force as physical force which can be reasonably anticipated, or expected, to cause death or serious physical injury. Great bodily harm has been defined as physical damage to the body, which is remarkable in magnitude or in degree. The law does not encourage the use of deadly force. And in circumstances—in most circumstances—a person must retreat from a perceived harm, if he is capable of doing that with complete safety.

"Another situation exists which may make the use of deadly force not justified. If the assailant's conduct appears to be motivated by his claim to property which the defendant possesses, and the defendant knows that if he surrendered the property the assailant would flee without harming him, then the defendant may not use deadly force, but must give up the property. The law of self-defense does not imply the right to attack in the first instance, or in mere retaliation. By definition, self-defense means the use of defensive force. Therefore, a person claiming his—this—right must act honestly and conscientiously, and not from anger, malice, or revenge. He must not provoke, nor must he bring, intentionally, the attack upon himself, in order to provide an excuse for an attack against someone else.

"A person is not justified in using physical force when, with the intent to cause physical injury to another person, he provokes the use of physical

defendant's belief that he faced imminent danger, and with the legal theory of initial aggressor. We find it unnecessary to point to specific references in the instructions. We conclude that these instructions clearly and accurately conveyed to the jury the substance of the requested instructions, that they were correct in law and that no injustice resulted in the court's failure to instruct in the exact language requested by the defendant. The court's instructions were complete, thorough and clearly set forth.

## II

The defendant also claims that the trial court improperly charged the jury regarding the statutory duty to retreat. It is his claim that General Statutes § 53a-19 (b) (1), which promulgates the retreat requirement, was not sufficiently enunciated in the court's instructions, thereby depriving him of his state and federal constitutional right[6] to due process and to present a defense.[7] The defendant did not properly preserve this claim for appellate review. He seeks review under *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989), because he

force by that person. Or, if he was the initial aggressor, if the defendant was the initial aggressor, his use of physical force upon another is justifiable under such circumstances, if he withdraws from the encounter and effectively communicates to the other person his intent to withdraw. But, the other person, notwithstanding, continues the struggle, or threatens the use of physical force. The degree of force used must be reasonable. But, deadly force may be used to counter a perceived deadly force. And when actual, or apparent, danger from harm has ended, then the right to use that force also ends. Again, the burden is on the state to prove that the defendant's conduct was not self-defense."

[6] The defendant claims a violation of his rights under article first, § 8, of the Connecticut constitution, and the fifth, sixth and fourteenth amendments to the United States constitution.

[7] Because the defendant has not provided an independent analysis to support his state constitutional claim, we will not review it. See *State* v. *Hernandez,* 204 Conn. 377, 394 n.9, 528 A.2d 794 (1987); *State* v. *Andrews,* 33 Conn. App. 590, 592 n.3, 637 A.2d 787, cert. denied, 229 Conn. 908, 640 A.2d 121 (1994).

claims that his fundamental right to present a defense includes a proper instruction on the elements of self-defense. *State* v. *DeJesus,* 194 Conn. 376, 388, 481 A.2d 1277 (1984). The defendant can prevail on his unpreserved constitutional claims only if the following four conditions are met: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State* v. *Golding,* supra, 239–40.

The trial court instructed the jury as follows: "The law does not encourage the use of deadly force. And in circumstances—in most circumstances—a person must retreat from a perceived harm, if he is capable of doing that with complete safety."

The state concedes, and we agree, that the challenged instruction is flawed. General Statutes § 53a-19 (b) provides that "a person is not justified in using deadly physical force upon another *if he knows* that he can avoid the necessity of using such force with complete safety (1) by retreating . . . ." (Emphasis added.) We cannot equate *being capable* of retreating with complete safety with knowing one may retreat with complete safety. Section 53a-19 (b) (1) contemplates a dual, subjective-objective standard, the subjective component being the knowledge. Because the instruction did not include the factor of the defendant's knowledge of his ability to retreat, it was improper. *State* v. *Paladino,* 19 Conn. App. 576, 578, 563 A.2d 321 (1989); see also *State* v. *Harrison,* 32 Conn. App. 687, 700, 631 A.2d 324, cert. denied, 227 Conn. 932, 632 A.2d 708 (1993).

In *State* v. *Quintana*, 209 Conn. 34, 47–48, 547 A.2d 534 (1988), our Supreme Court concluded that the trial court's failure to instruct the jury properly on the defendant's *knowledge* of his ability to retreat with complete safety and avoid the necessity of using deadly physical force was harmless error, where, as in the present case, the jury was presented with conflicting versions of the assault. "Therefore, the ultimate question before the jury was one of credibility and not the defendant's subjective knowledge of a safe avenue of retreat." *State* v. *Paladino,* supra, 19 Conn. App. 578.

Here, as in *Quintana* and *Paladino*, the principal issue for the jury to decide was which of the two conflicting versions of the assault was the most credible, not the defendant's subjective knowledge of his ability to retreat safely. The state presented a scenario in which the defendant robbed the victim and then stabbed him when he gave chase. By contrast, the defendant asserted that the victim had threatened him and shot him and that only then had he stabbed the victim during the ensuing struggle. By its verdict, the jury necessarily found the state's version of the assault to be more plausible. "Thus, in this context, the question of retreat was relatively insignificant." Id., 579.

We examine the charge in its entirety; *State* v. *Hopkins,* 222 Conn. 117, 130, 609 A.2d 236 (1992); we must determine whether it is reasonably possible that the jury was misled. *State* v. *Quintana,* supra, 209 Conn. 50. The instruction must be examined from the viewpoint of its effect on the jury in guiding it to a proper verdict. Id., 47. Read as a whole, the self-defense instruction in the present case, although not in strict accordance with § 53a-19 (b), presented the case to the jury in such a manner that no injustice resulted. *State* v. *Paladino,* supra, 19 Conn. App. 579. We conclude that it is not reasonably possible that the jury was

misled. The defendant has failed to meet the fourth prong of *Golding* because the improper instruction constituted harmless error beyond a reasonable doubt.

### III

The defendant also raises the unpreserved claim that the trial court's instruction regarding his statutory duty to surrender the victim's property before he could justifiably use deadly force was improper and deprived him of his right to a fair trial. He seeks review under *State* v. *Golding,* supra, 213 Conn. 239–40.

The court instructed as follows: "Another situation exists which may make the use of deadly force not justified. If the assailant's conduct appears to be motivated by his claim to property which the defendant possesses, and the defendant knows that if he surrendered the property the assailant would flee without harming him, then the defendant may not use deadly force, but must give up the property. The law of self-defense does not imply the right to attack in the first instance, or in mere retaliation."

General Statutes § 53a-19 (b) provides in pertinent part that "a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety . . . (2) by surrendering possession of property to a person asserting a claim of right thereto . . . ." The defendant has failed to satisfy the third prong of *Golding*; he has not demonstrated that the alleged constitutional violation clearly exists and deprived him of a fair trial. We decline to review this claim.

The judgment is affirmed.

In this opinion the other judges concurred.