[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The above-captioned personal injury action is before this court on a post-verdict application by the defendants to reduce the verdict by the amounts of certain benefits received from collateral sources. The issue is whether such reductions should be made where the jury received evidence of receipt of such benefits before calculating the amount of the plaintiff's economic losses.
Factual Background
The plaintiff, Marsha Kay Arkenbout, claimed in this lawsuit that she had been injured and had been unable to perform her work as a psychiatric nurse as a result of an automobile collision caused by the negligence of Thomas R. Ryan and Donna J. Fierlit. At trial, the plaintiff introduced evidence that she had attempted to do "light duty" nursing but that when that assignment ceased to be available, she began to receive disability insurance benefits pursuant to a disability insurance program that was one of the fringe benefits of her employment. Counsel for the defendants questioned the plaintiff about the amount and duration of the benefits she had received during the period that she claimed to be unable to work at her customary employment as a psychiatric nurse. Counsel for the Ryan defendants introduced into evidence as Exhibits 529, 530, 584 and 603 documents concerning the plaintiff's receipt of UNUM benefits, tax returns and W-2 forms filed by the plaintiff (Exhibit 601, 602) indicating her receipt of disability insurance payments from an insurer known as UNUM.
With regard to damages, this court instructed the jury that damages awarded could include income lost by the plaintiff if the loss of income and earning capacity was proximately caused by the negligence of the defendants and by the injuries sustained as a result. No party filed any request to charge specifically directed to the treatment by the jury of any evidence of receipt of disability insurance benefits, rather, the jury was instructed to determine what income had been "lost."
The verdict form was prepared by the court after consultation with counsel. After a final draft reflecting that consultation was prepared, counsel were asked on the record whether the verdict form was satisfactory. All counsel replied in the affirmative, and none of them requested any alteration, nor did they request that the court require the jury to make any findings or respond to any interrogatories with regard to the calculation CT Page 4225-PP of lost income or any other topic.
The defendants did not, in their exceptions to the charge, request that the court furnish the jury with any additional explanation as to the calculation of lost income.
The jury rendered a verdict for that plaintiff, apportioned between the defendants. It entered a zero on the blank on the verdict form under the heading "Economic Losses" labelled
 a. pecuniary losses for cost of reasonable and necessary medical care.
Under the next item of economic losses,
 b. pecuniary losses for loss of earnings and/or loss of earning capacity,
the jury entered the amount of $430,412.00.
The defendants now claim that the award for "loss of earnings and loss of earning capacity" should be reduced by the amount of the monthly disability income benefits that the plaintiff received from UNUM. The plaintiff opposes the requested reduction on the ground that since the jury knew of the receipt of such benefits, it should be presumed not to have considered these amounts to have been "losses" in accordance with this court's instruction to compensate the plaintiff only for "losses."
Upon a motion filed by the defendants, titled Motion for Collateral Source Hearing, this court conducted a hearing subject to resolution of the issue whether any deduction should be made.
On the basis of the evidence received at that hearing, the court finds that the plaintiff received the following amounts of disability income insurance payments from UNUM for the years indicated:
 1994: $4,986.00 1995: 15,858.55 1996: 4,134.42 --------- Total $24,978.97
Discussion
CT Page 4225-QQ
The legislation known as "Tort Reform I and II" contains conflicting provisions as to the method for identifying collateral source payments to be deducted from an award of economic damages.
The portion of that legislation, P.A. 87-227, which is codified at General Statutes § 52-572h provides for determination by the jury of the amount of economic and noneconomic damages and provides at subsection (f), that the jury
"specify . . . (3) any findings of fact necessary for the court to specify recoverable economic damages and recoverable noneconomic damages." "Recoverable economic damages" are defined in subsection (a) of § 52-572h as follows:
 (3) "recoverable economic damages" means the economic damages reduced by any applicable findings including but not limited to set-offs, credits, comparative negligence, additur and remittitur, and any reductions provided by section 52-225a; [emphasis supplied].
The portion of Tort Reform II now codified as General Statutes § 52-225a(b) and (c) provides that with regard to collateral source benefits, the court shall conduct a post-verdict hearing to receive evidence of collateral source benefits received by a claimant and reduce the economic damages by the amounts of the collateral source benefits found.
It thus appears that § 52-572h provides that the jury make the findings as to which economic damages are recoverable by deducting collateral source benefits and that § 52-225a
requires the court to conduct a hearing for the purpose of determining collateral source benefits to be deducted from the amount of the verdict before entering judgment.
In most cases tried to the jury, this apparent inconsistency is of no concern because the parties simply refrain from presenting to the jury any evidence of a claimant's receipt of benefits from collateral sources and then, mostly through negotiation but sometimes as a result of a post-verdict hearing conducted pursuant to § 52-225a, such benefits are determined and deducted from the award of economic damages reflected in the judgment entered by the court. CT Page 4225-RR
In the case before this court, the custom described above was not followed by counsel. Instead, the jury heard evidence of the plaintiff's receipt of disability income benefits and was presented with W-2 forms and tax returns and other documents indicating that she was receiving income from UNUM and the amounts received. See Exhibits 601, 602, 603, 23, 529, 530, 584, 567.
The plaintiff never claimed that the disability income should not be deducted by the jury in calculating the amount of income she had lost. Her counsel conceded at oral argument that her lost wages were the difference between what she would have earned at her pre-accident wage rate, plus the historical increases in that rate, less her actual income, including income in the form of disability benefits.
The purpose of the abolition of the collateral source rule in the legislation known as "Tort Reform I and II" was to prevent plaintiffs from recovering twice for the same economic losses: once from collateral sources such as health or disability insurance coverage and again from the tortfeasor. A result of this change in the law is that adjudged tortfeasors obtain a reduction in the amounts of compensation they must pay injured plaintiffs (except in some circumstances not claimed to be present here), in effect shifting part of the cost of the loss caused by the tortfeasor to third parties, such as providers of health and disability insurance benefits.
The purpose of this legislation was clearly not to give a tortfeasor a double deduction (once in calculating "loss" and again in deducting collateral source benefits from the verdict) nor to provide that an injured party must pay to the tortfeasor the amount of collateral source benefits she has received even if the amount of the damages awarded did not include the amount of such benefits. In other words, the statutes invoked by the defendants should not be construed in such a way that collateral sources benefits are deducted twice, once by being omitted from the calculation of income lost and again in a post-verdict proceeding.
The defendants take the position that unless a plaintiff takes steps to make it clear that the jury has not treated amounts compensated by collateral source benefits as part of the loss, a post-verdict deduction should be made. Since, however, it is the defendants who seek to establish entitlement to a CT Page 4225-SS deduction, it is the defendants who must logically be required to make a record that the portion of the damage award they seek to have deducted was in fact awarded by the jury.
The defendants in the case before this court could have obtained that determination by requesting that the court specifically include an instruction and/or finding as to "recoverable" economic damages on the verdict form in the same way as was done with respect to medical costs. Instead, they stipulated to the use of a verdict form that did not require such a finding, thereby waiving any claim that the verdict form was inadequate to reflect the findings they now seek. This choice by defense counsel seemed quite logical in view of the fact that the plaintiff was not claiming that she had "lost" the income that she received as disability income but was calculating her loss as the difference between her actual income, including those payments, and the income that she claimed she would have received at her nursing job absent her injuries.
The defendants did not submit any request to charge concerning the effect of the UNUM benefits on the calculation of lost income.
Where parties agree to the contents of the verdict form, they are precluded from claiming that the form is erroneous, Crowderv. Zion Baptist Church, Inc., 143 Conn. 90, 97-98 (1956); Nisbetv. Olmeda, 15 Conn. App. 6, 16-17 (1988). In Nisbet v. Olmeda, as in the case before this court, a party in a civil action agreed in chambers to the text of the verdict form. The Appellate Court found that the party was precluded from raising any post-verdict claims regarding the form, Nisbet v. Olmeda, 15 Conn. App. 17.
The defendants in effect claim that the finding of the jury is ambiguous as to whether the plaintiff's receipt of the UNUM benefits was or was not given effect in determining the amount of her loss of income and earning capacity. The Supreme Court has held that a party that took no steps at trial to complain about a claimed ambiguity in the verdict is not entitled to benefit from the situation. State v. Quintana, 209 Conn. 34, 51 (1988).
If the defendants believed that the jury might fail to find that the UNUM benefits constituted income that the plaintiff had not lost, they could have requested a specific interrogatory like the one used to clarify whether the jury was counting as a "loss" the value of medical care provided to the plaintiff through her CT Page 4225-TT health plan, which was a free fringe benefit to her.
By filling in a zero as to medical expenses, the jury clearly indicated that it understood that amounts paid to the plaintiff as fringe benefits were not to be considered as an economic loss. Since the plaintiff acknowledged at trial that the amount of the UNUM payments was money she had not lost, and since the defendant failed to request any specific finding by the jury and specifically agreed that the verdict form was satisfactory without inclusion of any reference to such benefits, the court finds that the defendants have failed to establish that a deduction is now warranted to avoid a double recovery by the plaintiff.
Conclusion
The defendants' request that the jury's award of "pecuniary losses for loss of earnings and/or loss of earning capacity" be reduced by the amount of disability income received by the plaintiff is denied for the foregoing reasons.