STATE OF CONNECTICUT *v.* WILLIAM MCDONOUGH
(13155)

PETERS, C. J., HEALEY, SHEA, CALLAHAN and COVELLO, Js.

*(One justice dissenting)*
Argued September 29—decision released November 24, 1987

*James G. Clark,* assistant state's attorney, with whom, on the brief, was *Christopher Malany,* deputy assistant state's attorney, for the appellant (state).

*Milo J. Altschuler,* for the appellee (defendant).

SHEA, J. After a jury trial the defendant was found guilty of the crimes of assault in the third degree, a violation of General Statutes § 53a-61, sexual assault

in the third degree, a violation of General Statutes § 53a-72a, and unlawful restraint in the first degree, a violation of General Statutes § 53a-95. *State* v. *McDonough,* 9 Conn. App. 631, 521 A.2d 160 (1987). The Appellate Court determined that the trial court had erred in instructing the jury concerning the inferences it might draw from circumstantial evidence. The state, after this court had granted certification, appealed from the Appellate Court's judgment reversing the judgment of the trial court. We conclude that the trial court's error was harmless in nature. Accordingly, we reverse the judgment of the Appellate Court, and remand the case to that court with direction to reinstate the judgment of the trial court.

Although the facts that the jury could reasonably have found are set forth in *State* v. *McDonough,* supra, we summarize those pertinent to the issues in this appeal. The victim testified that on the night of the crime, she had met the defendant, who was previously known to her, while out dancing. The defendant then invited her back to his apartment, ostensibly to check on his pets and have a nightcap. After they had spent a short time there, he proceeded to assault her both physically and sexually. The victim suffered bleeding and bruising from blows to her face and body. The defendant knocked the victim to the floor, straddled her legs, pinned her arms down, punched her in the face, and attempted to undress her. He refused to let her leave the apartment and threatened her life. The victim was ultimately successful in escaping, and subsequently was taken to the police station and the hospital.

The defendant testified that he had not sexually assaulted the victim, that there had been no physical altercation, and that he had not touched the victim at all, except to wake her after she had fallen asleep in his apartment. He further testified that the victim,

because of her intoxicated condition, had fallen over various items of furniture in his apartment.

## I

The only issues presented by this appeal are whether the Appellate Court was correct in concluding that the trial court erred in its charge to the jury on the use of circumstantial evidence in drawing inferences and that such error was not harmless under the standard applicable to constitutional errors. Initially, we note that ordinarily the defendant's failure to except to this portion of the court's charge would preclude review. Practice Book §§ 854, 4185. We will review his claim, however, as did the Appellate Court, because it implicates the fundamental constitutional right that the state prove the guilt of an accused beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 361, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State* v. *Miller,* 202 Conn. 463, 489–90, 522 A.2d 249 (1987); *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). The state makes no contention to the contrary.

During its charge to the jury, the court stated: "There is an application of our rule as to circumstantial evidence. Circumstantial evidence involves the offering of evidence of facts from which the jury is asked to infer the existence of and so to find proven another fact or facts. Such facts may be so found proven, but only if the jury finds: one, that the fact or facts from which the jury is asked to draw the inference has been proven by a fair preponderance of the evidence; and two, that the inference asked to be drawn is not only logical and reasonable, but is strong enough so that you can find it is more probable than not that the fact you are asked to infer is true."[1]

---

[1] In concluding its general instructions on circumstantial evidence, the trial court repeated this instruction in a slightly different form: "Circumstantial evidence is no different from direct evidence when the prerequi-

The Appellate Court found this portion of the charge to be erroneous. "The court's charge on circumstantial evidence allowed the jury to find facts from which an inference may be drawn, and to make the inference itself, by a fair preponderance of the evidence standard. Such an instruction is erroneous as applied to facts which are essential to proof of an element of a crime because such facts, whether basic or inferred, must be proved beyond a reasonable doubt. *State* v. *Rodgers,* 198 Conn. 53, 59, 502 A.2d 360 (1986)." *State* v. *McDonough,* supra, 634.

We agree with the Appellate Court's conclusion that this portion of the trial court's instructions was erroneous. Although, as an abstract proposition, it is not illogical to draw an inference if the evidence establishes that it is probable, such an instruction in a criminal case may confuse a jury with respect to inferring a particular fact essential to prove an element of the crime. *State* v. *Rodgers,* supra, 58 n.1. Where a group of facts are relied upon for proof of an element of the crime it is their cumulative impact that is to be weighed in deciding whether the standard of proof beyond a reasonable doubt has been met and each individual fact need not be proved in accordance with that standard. It is only where a single fact is essential to proof of an element, however, such as identification by means of fingerprint evidence, that such evidence must support the inference of that fact beyond a reasonable doubt. *State* v. *Cimino,* 194 Conn. 210, 211, 478 A.2d 1005 (1984); *State* v. *Perez,* 183 Conn. 225, 227, 439 A.2d 305 (1981);

---

sites to its use are established. You are free to apply the principle with the same force and effect as an eyewitness's direct testimony once you're satisfied [that], again, the underlying fact or facts have been proven by a fair preponderance of the evidence, and that the inference is logical, reasonable and is strong enough for you and is strong enough to permit you to find that it is more probable than not that the fact you're asked to infer is true."

*State* v. *Gaynor,* 182 Conn. 501, 503–504, 438 A.2d 749 (1980). We have disapproved of this type of instruction because of its potential for misleading a jury concerning the state's burden to prove each element of the crime beyond a reasonable doubt. *State* v. *Rodgers,* supra, 57–59.

## II

We have recognized that an erroneous charge is not always harmful. *State* v. *Miller,* supra, 489–92. An isolated error in an instruction may be cured by other portions of the charge, or circumstantial evidence may be so insignificant compared to direct evidence that it is clear beyond a reasonable doubt that the erroneous instruction did not affect a jury's determination of guilt or innocence. Id.

We have often said that the charge should be read as a whole in determining whether it is reasonably possible that an erroneous instruction could have misled a jury concerning the state's burden of proof. "It is well established . . . that individual instructions are not to be judged in artificial isolation from the overall charge. *State* v. *Dolphin,* 195 Conn. 444, 451, 488 A.2d 812 (1985); *State* v. *Reid,* 193 Conn. 646, 660, 480 A.2d 463 (1984); *State* v. *Hines,* 187 Conn. 199, 209, 445 A.2d 314 (1982). The whole charge must be considered from the standpoint of its effect on the jury in guiding them to a proper verdict; *State* v. *Corchado,* 188 Conn. 653, 660, 453 A.2d 427 (1982); *State* v. *Williams,* 182 Conn. 262, 269, 438 A.2d 80 (1980); *State* v. *Piskorski,* 177 Conn. 677, 746–47, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979); and not critically dissected in a microscopic search for possible error. *State* v. *Harris,* 172 Conn. 223, 226–27, 374 A.2d 203 (1977)." *State* v. *Reddick,* 197 Conn. 115, 132, 496 A.2d 466 (1985), cert. denied, 474 U.S. 1067, 106 S. Ct. 822, 88 L. Ed. 2d 795 (1986); *State* v. *Miller,*

supra, 491–92; *State* v. *Whelan,* 200 Conn. 743, 757, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986).

The Appellate Court recognized the principle that the disputed charge should be read in the context of the charge as a whole. *State* v. *McDonough,* supra, 631. Nevertheless, it concluded that the charge as a whole was likely to mislead the jury concerning the state's burden of proof. Id., 636. We disagree with this conclusion.

While the Appellate Court acknowledged that the charge should be read as a whole, it failed to give proper weight to a crucial portion of the trial court's supplemental instructions, given in response to a jury request for further instructions. After the jury had begun its deliberations, it requested that the court reread its instructions on several issues including those relating to drawing inferences from circumstantial evidence. The trial court in reinstructing the jury on circumstantial evidence repeated the same misleading statements it had made in the original charge, but then clarified its meaning by giving the following supplemental instruction: "Keeping in mind that ultimately, regardless of the instructions I've given you on inferences, the State bears the burden of proving each element of each charge beyond a reasonable doubt. That's something else. This is simply the charge with respect to inferences. It does not relate to the ultimate burden of proof that the State has in the case." This instruction significantly reduced the harmfulness of the erroneous portion of the charge.

In analyzing whether the disputed portion of the instructions was harmful, the Appellate Court also erred in concluding that circumstantial evidence was an important factor in this case. "Although the principal factual issue for each crime charged in this case

was not the intent of the defendant, because he denied the commission of any crime, this was nonetheless a case in which the circumstantial evidence and instructions thereon played a major role in the state's proof." *State* v. *McDonough,* supra, 636.

In considering the harmfulness of an erroneous instruction on circumstantial evidence, we have distinguished between cases where circumstantial evidence is the primary proof of an element of the crime and those where direct testimony plays the major role. "Where the principal factual issue at trial is intent, which is typically proven by circumstantial evidence, 'we will closely scrutinize the court's instructions' on circumstantial evidence, in isolation from the remainder of the charge, to determine whether the court misled the jury as to the state's burden of proof." *State* v. *Robinson,* 204 Conn. 207, 210, 527 A.2d 694 (1987). Unlike intent, such issues as identity and whether the crime charged has occurred, are ordinarily proved by direct testimony with circumstantial evidence playing a subordinate role. "Accordingly, we review the court's instruction not in isolation, but in the context of the charge as a whole, to determine whether it is ' "reasonably possible that the jury was misled" ' by an erroneous explanation regarding the use of circumstantial evidence." Id.

In the case at bar, the credibility of the witnesses was the primary issue. As the Appellate Court noted: "The basic factual issue for the jury to determine was whether the defendant had committed the assaults and the restraint. The defendant admitted that he was with the victim during the evening and early morning hours in question but denied that he was the perpetrator of any crimes. The defense, therefore, was similar to an alibi defense in that the defendant did not deny that the victim sustained injuries but did deny that he was responsible for these injuries. A significant factor for

the jury's consideration was the credibility to be accorded to the victim and to the defendant. The principal factual issues, therefore, were not classically dependent upon circumstantial evidence for their proof, as is true in cases where the principal factual issue is the intent or state of mind of a defendant." *State* v. *McDonough,* supra, 635.

In this case there was substantial direct evidence of the crime from the victim and from a witness who lived in the apartment directly beneath the defendant's apartment and who had overheard portions of the conversation between the victim and the defendant.[2] The Appellate Court recognized that direct evidence from the victim and this neighbor was the heart of the state's

---

[2] This neighbor testified as follows:

"Q. You say you heard him walk down the hall? You know his walk?

"A. I heard the door shut, and after a while I heard a girl's voice . . . .

"Q. What did you hear her say?

"A. She was saying—Just a few minutes after that I heard her say, 'Get off of me. Get off of me. Leave me alone. Don't touch me.' And she was crying.

"Q. You could hear that?

"A. I could hear that. And she was swearing at him. Then I heard Bill say, 'Shut up because everybody is going to hear you.'

"Q. Could you hear the tone of the voice in which he said this?

"A. The girl?

"Q. Bill. Could you hear what tone he was saying this?

"A. Well, he said it a little mad. And she kept saying, 'Stay away from me. Don't touch me. Leave me alone.' And then I heard Bill say, 'I just want to put a wet cloth on your face.' She says, 'Leave me alone. Don't touch me. Get away from me.' That's what I heard.

*  *  *

"Q. You said that you heard the girl say, 'Get off of me?'

"A. Yes.

"Q. This went on, you say, for quite a period of time?

"A. Yes.

"Q. Could you tell the state of her voice? Was she laughing? Was she crying?

"A. Well, she sounded scared.

"Q. That's what it sounded like to you?

"A. Yeah."

case against the defendant: "The victim's testimony about the actions of the defendant was direct evidence offered as the primary proof that the assaults and restraint did, in fact, take place, and that the defendant was the perpetrator of them. The state also offered the direct evidence of a witness who lived in the apartment directly beneath the defendant's apartment. The words overheard and testified to by that witness corroborated the testimony of the victim." Id. The victim through her testimony provided direct evidence of every element of each crime charged. In addition, the neighbor presented direct evidence corroborating the victim's testimony.

The Appellate Court erred when it concluded that the trial court's instructions on drawing inferences from circumstantial evidence constituted harmful error. An erroneous instruction on circumstantial evidence need not be given constitutional significance where there is sufficient direct evidence, not implicated by the error, to establish all essential elements of the crime charged. In similar cases, where the principal issue at trial was the credibility of the victim, where there was substantial direct evidence of the crimes charged, and where intent was not seriously disputed, we have found erroneous instructions suggesting the probability standard for drawing inferences from circumstantial evidence to be harmless error. *State* v. *Smith,* 201 Conn. 659, 673, 519 A.2d 26 (1986). "Under these circumstances it was not reasonably possible that the trial court's erroneous explanation concerning circumstantial evidence misled the jury. *State* v. *Reddick,* [supra, 132]; *State* v. *Farrar,* [7 Conn. App. 149, 156, 508 A.2d 49 (1986)]. The error was harmless beyond a reasonable doubt. *Chapman* v. *California,* 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705, reh. denied, 386 U.S. 987, 87 S. Ct. 1283, 18 L. Ed. 2d 241 (1967)." *State* v. *Smith,* supra, 673–74.

In the present case, none of the circumstantial evidence was essential to prove an element of the crime. According to the Appellate Court: "The state's circumstantial evidence consisted of the testimony of other witnesses who saw the victim shortly after she had left the defendant's apartment. These witnesses testified that the victim had blood all over her face and clothes and was crying. Other circumstantial evidence relating to the elements of the crime was comprised of the victim's hospital emergency room report, and the testimony of a police officer." *State* v. *McDonough,* supra, 635. This evidence served only to support the victim's credibility and to corroborate her account of the crime. Each evidentiary fact need not be proved beyond a reasonable doubt. "It is only where a particular subordinate fact is essential to the proof of an element of the crime that it must be proved beyond a reasonable doubt." *State* v. *Rodgers,* supra, 58 n.1.[3] Therefore, the possibility that the jury, as a result of the erroneous instruction, applied a preponderance of the evidence standard in drawing inferences from the circumstantial evidence in the case could not reasonably have affected the findings of the jury that the defendant had committed the crimes of sexual assault in the third degree, unlawful restraint in the first degree, or assault in the third degree. Especially in light of the supplemental instruction given at the jury's request, any error

[3] The reliance of the dissenting opinion upon the quotation from *State* v. *Rodgers,* 198 Conn. 53, 57, 502 A.2d 360 (1985), that "only if the jury finds the basic fact to have been proved beyond a reaonable doubt may it go on to consider the inference," overlooks the significance of footnote 1 in *Rodgers* defining the term "basic fact." The first sentence of the footnote, referenced to the words "basic facts," which conclude the paragraph discussing that concept, is as follows: "Our discussion is concerned with only those facts essential to prove an element of the crime." Id., 58 n.1. It is reasonably clear from this footnote that the "basic facts" that must be proved beyond a reasonable doubt are those facts "essential to the proof of an element of the crime . . . ." Id.

in the instructions was harmless beyond a reasonable doubt. *State* v. *Smith,* supra, 673–74.

We reverse the judgment of the Appellate Court and remand the case to the Appellate Court with direction to reinstate the judgment of the trial court.

In this opinion PETERS, C. J., concurred.

CALLAHAN, J., with whom COVELLO, J., joins, concurring. While I agree with the result reached by the majority, I disagree with the proposition of law quoted from *State* v. *Rodgers,* 198 Conn. 53, 58 n.1, 502 A.2d 360 (1985), which provides: "It is only where a particular subordinate fact is essential to the proof of an element of the crime that it must be proved beyond a reasonable doubt." I believe this proposition is misleading and has led to a great deal of confusion.

It is axiomatic that the state's burden of proof beyond a reasonable doubt applies to each and every element comprising the offense charged. But this burden of proof does not operate upon each of the many subsidiary, evidentiary, incidental or subordinate facts, as distinguished from elements or ultimate facts, upon which the prosecution may collectively rely to establish a particular element of the crime beyond a reasonable doubt. See *United States* v. *Viafara-Rodriguez,* 729 F.2d 912, 913, (2d Cir. 1984), citing *United States* v. *Valenti,* 134 F.2d 362, 364 (2d Cir.), cert. denied, 319 U.S. 761, 63 S. Ct. 1317, 87 L. Ed. 1712 (1943); *United States* v. *Beechum,* 582 F.2d 898, 913 n.16 (5th Cir. 1978), cert. denied, 440 U.S. 920, 99 S. Ct. 1244, 59 L. Ed. 2d 472 (1979); *Frick* v. *State,* 177 Ark. 404, 411–12, 6 S.W.2d 514 (1928); *People* v. *Klinkenberg,* 90 Cal. App. 2d 608, 632, 204 P.2d 47 (1949); *State* v. *Raine,* 93 Idaho 862, 864, 477 P.2d 104 (1970); *Burris* v. *State,* 465 N.E.2d 171, 186 (Ind. 1984); *State* v. *Davis,* 25 N.C. App. 181, 185, 212 S.E.2d 516 (1975); *State* v. *Barry,* 34 A.2d

661, 663 (N.H. 1943); 1 F. Wharton, Criminal Evidence (14th Ed.) § 15, p. 37. Where the prosecution must rely upon circumstantial evidence, either in part or in whole, each link in the chain of circumstantial evidence need not be established beyond a reasonable doubt. *Frick* v. *State,* supra; *People* v. *Hall,* 114 Ill. 2d 376, 499 N.E.2d 1335 (1986); *State* v. *Laue,* 225 Neb. 57, 402 N.W.2d 313 (1987); C. McCormick, Evidence (3d Ed.) § 341, p. 962 n.6. As the majority first notes, supra, 355, it is not any one fact, but rather, the cumulative impact of a multitude of facts and the reasonable and logical inferences therefrom which establish guilt beyond a reasonable doubt in a case involving substantial circumstantial evidence.

Accordingly, to the extent that the majority's use of the phrase "a particular subordinate fact essential to the proof of an element" may be read to require that any evidentiary, subordinate or incidental fact need be proven beyond a reasonable doubt, even where such a fact is crucial to proof beyond a reasonable doubt of an element of the crime, I disagree. "Burdens of proof never operate on evidence; they operate on the *ultimate facts or elements* that the evidence is offered to prove." (Emphasis added.) *United States* v. *Viafara-Rodriguez,* supra. If the state fails to prove a crucial evidentiary fact to the jury's satisfaction it may not have met its required burden of proof beyond a reasonable doubt of the element or elements of the crime to which that evidentiary fact is crucial. That burden of proof, however, applies only to the element or elements, not to the evidentiary fact.

I also disagree with the dissenting opinion because it requires that the fact or facts, from which a trier of fact is asked to draw an inference, be proven beyond a reasonable doubt prior to the inference being drawn. I note that this alleged principle of law is first seen in *State* v. *Rodgers,* supra, 57, but the *Rodgers* opinion

fails to cite any authority nor am I able to find any to support this proposition. Accordingly, I respectfully disagree with the dissent for, I believe, it relies upon an erroneous statement of the law regarding proof of evidentiary facts and the drawing of inferences therefrom.

ARTHUR H. HEALEY, J., dissenting. I do not agree and I would affirm the judgment of the Appellate Court.

The majority agrees with the Appellate Court that the challenged jury instruction was erroneous. That instruction was the following: "Circumstantial evidence involves the offering of evidence of facts from which the jury is asked to infer the existence of and so to find proven another fact or facts. Such facts may be so found proven, but only if the jury finds: one, that the fact or facts from which the jury is asked to draw the inference has been proven by a fair preponderance of the evidence; and two, that the inference asked to be drawn is not only logical and reasonable, but is strong enough so that you can find it is more probable than not that the fact you are asked to infer is true."

The majority concludes, however, that, under the circumstances, including the reading of the charge as a whole as well as a supplemental charge, it is not reasonably possible that this erroneous instruction could have misled the jury concerning the state's burden of proof beyond a reasonable doubt. In its ultimate decisional calculus, the majority maintains that although the Appellate Court acknowledged the necessity of reading the charge as a whole, "it failed to give proper weight to a crucial portion of the trial court's supplemental instructions." These instructions were given in response to a jury request for "a written copy of the elements" making up each of three charges in the information and on each of which the defendant was subsequently found guilty. After the court told the jury that

it normally did not give the jury written copies, the court indicated that it would reread that portion of its charge "which related only to the charges." At that point, a juror said: "Your Honor, we would like to have that portion that relates to the inference read in particular." The following then took place:

"The Court: All right.

"Juror: I don't know if that's part of the charge, the elements that make up the charge.

"The Court: My understanding of the request was simply that the jurors wanted to hear the definitions of the three specific crimes themselves. If you also wish to have the portion of the charge dealing with inferences read to you, I will do that as well.

"Jurors: That's what we want." The court then adjourned for the day.

The next day before recharging the jury, during a further colloquy with the jury about its request, the following took place:

"Juror: We're talking about the definition of the charges?

"The Court: Yes. There are three charges.

"Juror: We understand that. It's the definition we want to specify on that we are deliberating on.

"The Court: The elements of each crime is what you want. We will give you copies of the statute, or I'll reread that portion of the charge, whichever you prefer is acceptable.

"Juror: I think the copy would be better.

"The Court: All right. Now, you also want reread the portion of my instructions concerning the question of inferences. . . ."

Thereupon, the court recharged the jury on circumstantial evidence and repeated the prior erroneous instruction, *not once but twice,* during the recharge. It closed its recharge with the following instruction: "Keeping in mind that ultimately, regardless of the instructions I've given you on inferences, the State bears the burden of proving each element of each charge beyond a reasonable doubt. That's something else. This is simply the charge with respect to inferences. It does not relate to the ultimate burden of proof that the State has in the case."[1]

It is this last quoted portion of its supplemental instruction that the majority maintains was the vehicle by which the trial court "sought to clarify its meaning" of the earlier erroneous instructions and which, the majority notes, was the supplemental "instruction [which] significantly reduced the harmfulness of the erroneous portion[s] of the charge."

The majority's analysis, which includes the intent-identity talismanic differences of such cases as *State* v. *Rodgers,* 198 Conn. 53, 502 A.2d 360 (1985) (intent), and *State* v. *Reddick,* 197 Conn. 115, 132, 496 A.2d 466 (1985), cert. denied, 474 U.S. 1067, 106 S. Ct. 822, 88 L. Ed. 2d 795 (1986) (identity), in reaching its ultimate result, is fatally flawed.

First, the erroneous instructions are uniquely erroneous. We have ruled on the "more probable than not" instruction at least six times in the last two years. *State* v. *Miller,* 202 Conn. 463, 522 A.2d 249 (1987); *State* v. *Mullings,* 202 Conn. 1, 519 A.2d 58 (1987); *State* v. *Smith,* 201 Conn. 659, 519 A.2d 26 (1986); *State* v. *Whelan,* 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986); *State*

---

[1] Some time later, the court, apparently sua sponte, with the consent of counsel, again recharged the jury on each of the three specific charges involved including the elements of each.

v. *Rodgers,* supra; *State* v. *Reddick,* supra. In not a single one of these cases did the trial court instruct the jury that it could infer a fact if the fact or facts *from which* it might draw the inference was proven only by a fair preponderance of the evidence. The state agreed at oral argument that the statement in the defendant's brief to that effect was correct.[2] Moreover, in each of these six cases the jury was instructed immediately prior to the challenged "more probable than not" instruction that it might use the "more probable than not" route to draw an inference *only if it first* found that the fact or facts from which it chose to draw an inference *had been proven beyond a reasonable doubt. State* v. *Miller,* supra, 490; *State* v. *Mullings,* supra, 11; *State* v. *Smith,* supra, 673; *State* v. *Whelan,* supra, 755.

Without delving into the intrinsic merits of the *Rodgers-Reddick* cluster of cases, we have been at pains to point out the significance of proof beyond a reasonable doubt in the process of drawing an inference in a criminal case. For example, in *Rodgers* we said: "Circumstantial evidence is evidence offered to prove a certain fact from which the jury is asked to infer, and so to find, the existence of another fact in issue. The jury must initially find that the state has proved the basic fact, from which the jury is asked to draw the inference, beyond a reasonable doubt. If and only if the jury finds the basic fact to have been proved beyond a reasonable doubt may it go on to consider the inference." *State* v. *Rodgers,* supra, 57.

---

[2] Specifically, the defendant's brief stated: "In not one of these cases [the six cases just cited] did the court also instruct the jury that they could infer a fact if the facts from which they were to draw the inference were proven only by a fair preponderance of the evidence." It is with this statement the state agreed at oral argument. In addition, I would add to these six cases our decision in *State* v. *Robinson,* 204 Conn. 207, 527 A.2d 694 (1987), handed down after the briefs in this case had been filed.

In this case, we are confronted with an instruction on the legal process of drawing inferences that is erroneous in a fashion not presented in any of our earlier cases. The "beyond a reasonable doubt" standard is nowhere present in the challenged instruction; that instruction clearly sounds in the civil and not the criminal context.

Turning to the supplemental instruction, there the majority maintains that the Appellate Court "failed to give proper weight to a crucial portion of the trial court's supplemental instructions." The majority asserts that it "significantly reduced the harmfulness of the erroneous portion of the charge." It is true that the Appellate Court's opinion does not develop the significance of this supplemental instruction which, reasonably read and fairly heard by a lay jury, is actually not the curative legal poultice for which the majority touts it. In it, the trial court did tell the jury that "regardless of the instructions I've given you on inferences, the State bears the burden of proving each element of each charge beyond a reasonable doubt. That's something else." After its "[t]hat's something else" observation, the trial court then instructed the jury that "[t]his is simply the charge with respect to inferences. It does not relate to the ultimate burden of proof that the State has in the case." Under all the circumstances, this supplemental instruction significantly increased the harmfulness of the earlier erroneous instructions rather than acting as a curative. The charge on inferences, contrary to the instruction given, *does* relate to the ultimate burden of proof of the state. When this defendant pleaded not guilty and elected a jury trial, he then triggered his constitutional right to have the state prove him guilty beyond a reasonable doubt on each essential element of each of the crimes charged. *In re Winship,* 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State* v. *Fernandez,* 198 Conn. 1, 20, 501 A.2d

1195 (1985); *State* v. *Griffin,* 175 Conn. 155, 162, 397 A.2d 89 (1978). This is so, whether intent is or is not *the* or *a* basic factual issue at the trial, as opposed, for example, to identity. Intent was an essential element of the crimes charged and this jury was not given, in the charge as a whole, the standard for drawing inferences in a criminal case that was constitutionally correct. Rather, this defendant was convicted by a jury based on instructions that unconstitutionally diluted the state's burden of proof.

The majority has determined that the Appellate Court erred when it concluded that the instructions on drawing inferences from circumstantial evidence constituted constitutional error. It then follows that determination with the statement that "[a]n erroneous instruction on circumstantial evidence need not be given constitutional significance where there is sufficient direct evidence, not implicated by the error, to establish all the elements of the crime charged." Two observations: First, its opinion skirts the constitutional flaw by saying that credibility was the principal issue and intent "was not seriously disputed." It cannot possibly be suggested that the defendant *conceded* at the trial that he *intended* to commit the crimes to which he pleaded not guilty. Every element was in dispute. Second, how could a criminal jury find this defendant guilty when it was given the civil standard to employ the process of drawing an inference? No amount of instruction elsewhere in the whole charge that the state had to prove each element of each crime beyond a reasonable doubt can cure and make harmless beyond a reasonable doubt the instructions on the drawing of inferences given to the jury in this case.

Even were a discussion in order that the "beyond a reasonable doubt" standard applies in the inference area only with reference to inferences necessary to prove an essential element of the crime, as opposed to

inferences where the inference is an evidentiary fact not necessary to proving an essential element of the crime; see *State* v. *Rodgers,* supra, 58 n.1; that does not avail the majority. This is so because the instructions never elucidated that distinction for the jury but rather, as the Appellate Court properly suggests, the instructions here "indivisibly bound proof of each element of the crimes charged," insofar as circumstantial evidence was involved, to the standard of a fair preponderance of the evidence. The jury was therefore given two standards of proof: the fair preponderance rule for circumstantial evidence and the beyond a reasonable doubt rule for direct evidence. The comings and goings of the jury indicate its uncertainty resulting from the court's instructions. The jury did single out the challenged portions of the instructions; it asked about inferences, the challenged instruction was focal in the reinstructions and the erroneous instruction was repeated not once but twice after the jury had started its deliberations. I cannot come to any conclusion other than that it is reasonably possible that the jury was misled here. I would accordingly affirm the judgment of the Appellate Court.

Therefore, I dissent.

