# STATE OF CONNECTICUT *v.* RAYMOND FLINTER
## (4850)

BORDEN, NORCOTT and FOTI, Js.

Argued June 1—decision released September 27, 1988

*Timothy C. Moynahan,* with whom, on the brief, was *Brian J. Kornbrath,* for the appellant (defendant).

*Mitchell S. Brody,* deputy assistant state's attorney, with whom, on the brief was *Arnold Markle,* former state's attorney, for the appellee (state).

BORDEN, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of the crimes of robbery in the first degree in violation of General Statutes § 53a-134 (a) (2), larceny in the first degree in violation of General Statutes § 53a-122 (a) (2), conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 (a) and 53a-134 (a) (2), and larceny in the first degree in violation of General Statutes §§ 53a-119 (8) and 53a-122 (a) (3). The defendant claims (1) that the trial court erred in instructing the jury regarding the drawing of inferences from circumstantial evidence, and (2) that the prosecutor's comments made during closing argument deprived the defendant of his constitutional right to a fair trial. We find no reversible error.

The jury could reasonably have found the following facts.[1] Two men wearing ski masks and gloves robbed a branch office of the Jefferson Federal Savings Bank located at the Bella Vista apartment complex in New Haven. At the time of the robbery, three bank tellers and several customers were inside the bank. The tellers were able to describe the two robbers. One of the robbers was described as a tall, thin man with mustache hairs protruding through his mask, wearing a green jump suit and blue and white high-topped sneakers. The other robber was described as a shorter, heavier man with fair skin, very light eyes, and a harsh voice, wearing old bell-bottomed blue jeans, a checked tweed coat over a dark sweatshirt, and grey suede shoes.

[1] This case arises out of the same criminal conduct described in *State v. McNellis,* 15 Conn. App. 416, 546 A.2d 292 (1988). The defendant and McNellis, his accomplice, were tried separately.

Both of the robbers were armed with handguns. They emptied the contents of the cash drawers and a vault drawer into a green duffel bag and a pillowcase. Among the stolen contents was bait money, which contained exploding red dye packets.

Maintenance personnel had seen two masked men get out of a green Thunderbird automobile, which was parked in the bank driveway with its motor running, and enter the bank. A building superintendent got into the Thunderbird and started to drive it away from the bank. When the robbers came out of the bank, they chased after the automobile, banged on it, and then fired several shots. At that time, the dye packets in the bait money exploded, discharging a red dye into the air. The robbers were then observed fleeing across the street and into a bushy area near a building diagonally across from the bank. Eyewitnesses to the robbers' flight said that they were the only individuals who pursued the Thunderbird and entered the bushes.

After the superintendent told a security guard to call the police, he and another superintendent saw William McNellis, who was breathing heavily and perspiring, with a leaf stuck to his cheek, emerge from the bushy area at the top of the embankment. Behind McNellis was a taller man, later identified as the defendant. Only the defendant and McNellis were seen emerging from the bushes. The defendant, who was wearing white and blue high-topped sneakers, started walking rapidly toward another building. He was immediately apprehended by a police officer responding to the robbery alarm. In the bushes, the police found a green jump suit, a black and white coat, two semi-automatic pistols, a green duffle bag containing dye-stained money, two ski masks and two pairs of gloves.

## I

The defendant first claims that the court's instructions regarding inferences drawn from circumstantial

evidence diluted the constitutional requirement that the state prove guilt beyond a reasonable doubt. The court's instructions included the all too familiar language that inferences of fact may be made from circumstantial evidence "if the fact from which you are asked to draw the inference has itself been proven beyond a reasonable doubt, and the inference asked to be drawn is not only logical and reasonable, but is strong enough so that you can find that it is *more probable than not that the fact to be inferred is true.*" (Emphasis added.) The defendant argues that this charge constituted reversible error because the state relied heavily on circumstantial evidence to prove the defendant's participation in the charged offenses. We disagree.

We first note that, despite the defendant's failure to except to the court's jury charge, his claim is reviewable under *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). *State* v. *McDonough,* 205 Conn. 352, 354, 533 A.2d 857 (1987). Moreover, it is well established that such an instruction is erroneous.[2] Id., 355–56; see *State* v. *Hufford,* 205 Conn. 386, 407, 533 A.2d 866 (1987); *State* v. *Coleman,* 14 Conn. App. 657, 663, 544 A.2d 194 (1988). The only question, then, is whether the error is reversible in this case. *State* v. *Coleman,* supra. We conclude that it is not.

"In considering the harmfulness of an erroneous instruction on circumstantial evidence, we have distinguished between cases where circumstantial evidence is the primary proof of an element of the crime and those where direct testimony plays the major role." *State* v. *McDonough,* supra, 358. "Unlike intent, [which is typically proven by circumstantial evidence,] such issues as identity and whether the crime charged has

---

[2] We note, however, that at least two members of our Supreme Court now apparently conclude that such an instruction is not necessarily erroneous. See *State* v. *McDonough,* 205 Conn. 352, 362–64, 533 A.2d 857 (1987) (*Callahan* and *Covello, Js.,* concurring).

occurred, are ordinarily proved by direct testimony with circumstantial evidence playing a subordinate role." Id. In these cases, we review the charge as a whole to determine whether there is a reasonable possibility that the jury was misled by the erroneous instruction. Id. This instruction does not have "constitutional significance where there is sufficient direct evidence, not implicated by the error, to establish all of the essential elements of the crime charged. In similar cases, where the principal issue at trial was the credibility of the victim, where there was substantial direct evidence of the crimes charged, and where intent was not seriously disputed, we have held erroneous instructions suggesting the probability standard for drawing inferences from circumstantial evidence to be harmless error." Id., 360.

The central issue at trial was identity, that is, whether the defendant was in fact one of the individuals who robbed the bank. The defendant correctly points out that no single witness provided direct testimony identifying him as one of the robbers. Since the robbers were masked during the crime, each eyewitness could provide only a description of them in terms of their race, gender, height, weight and dress.

This testimony, if believed by the jury, established an unbroken chain of eyewitness observations of two individuals who drove to the Jefferson Federal Savings Bank, robbed the bank, left the bank, chased the green Thunderbird, entered nearby bushes, emerged from those bushes, and were arrested by the police. The testimony of the witnesses was functionally and legally the same as if one person had been able continuously to observe a masked individual in the commission of the crime from its start to the individual's apprehension. Taken together, then, the testimony of the several witnesses in this case amounted to direct eyewitness testimony on the issue of identification. Under these

circumstances, the conclusion that the defendant was one of the bank robbers required no drawing of inferences from circumstantial evidence, the critical inquiry where this type of error is claimed in a jury instruction. *State* v. *McDonough,* 358–60. Instead, the unbroken chain of identification evidence simply presented the jury with a credibility question regarding this direct eyewitness testimony. Thus, the erroneous instruction did not have constitutional significance because there was sufficient direct evidence, not implicated by the error, to establish all of the essential elements of the crime charged. Id., 360. "Under these circumstances, having reviewed the court's instructions as a whole, we conclude that it is not reasonably possible that the erroneous instruction misled the jury in rendering its verdict." *State* v. *Coleman,* supra, 664.

## II

The defendant next claims that the state's attorney's comments made during closing argument deprived the defendant of his constitutional right to a fair trial under the fourteenth amendment to the United States constitution and article first, § 8, of the Connecticut constitution.[3] We disagree.

The defendant's argument is based on two separate claims of prosecutorial misconduct. We address these claims of misconduct seriatim.

## A

During his rebuttal argument to the jury, the state's attorney commented on the evidence tending to establish guilt and on a series of questions which defense

---

[3] Although the defendant relies on both the fourteenth amendment to the United States constitution and article first, § 8, of the Connecticut constitution, he offers no separate analysis of the Connecticut constitution as a basis for different treatment of the federal and state constitutional claims. We decline to undertake such analysis. See *State* v. *Foshay,* 12 Conn. App. 1, 14 n.10, 530 A.2d 611 (1987).

counsel had failed to ask a witness. This line of argument culminated in the following remark: "[Defense counsel] didn't talk to you about that because he knows they're guilty. I mean, he's got to know they're guilty, there is nothing else." The state concedes on appeal that the remark was improper because it created the risk that the jury's attention would be diverted away from its own appraisal of the evidence and toward the state's attorney's and defense counsel's personal views. See *State* v. *Williams,* 204 Conn. 523, 541, 529 A.2d 653 (1987).

Defense counsel immediately objected to the improper remark and said: "I don't know they're guilty." Thereupon, the court sustained the objection. At the conclusion of the arguments to the jury and before the court began its charge to the jury, the defendant requested a mistrial based on the state's attorney's remarks. The request was denied by the court. The defendant argues that the court erred in failing to declare a mistrial.

A mistrial is appropriate only where it is apparent to the court that as a result of some occurrence during the trial a party has been deprived of an opportunity for a fair trial. *State* v. *DeMatteo,* 186 Conn. 696, 703, 443 A.2d 915 (1982); *State* v. *Floyd,* 10 Conn. App. 361, 364, 523 A.2d 1323, cert. denied, 203 Conn. 809, 525 A.2d 523 (1987). When a mistrial is sought on the ground that a prosecutor's improper remarks violated the defendant's constitutional right to due process of law, the same standard applies. *State* v. *Cosgrove,* 186 Conn. 476, 488–89, 442 A.2d 1320 (1982). "When a verdict is challenged on the basis of the prosecutor's allegedly prejudicial remarks, the defendant bears the burden of proving the remarks prejudicial in light of the whole trial. 'The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal

defendants alleging prosecutorial misconduct.' " *State* v. *Floyd,* supra, quoting *State* v. *Binet,* 192 Conn. 618, 628, 473 A.2d 1200 (1984).

"In determining whether prosecutorial misconduct was so serious as to amount to a denial of due process, [our Supreme Court], in conformity with courts in other jurisdictions, has focused on several factors. Among them are the extent to which the misconduct was invited by defense conduct or argument; *State* v. *Fullwood,* [194 Conn. 573, 585, 484 A.2d 435 (1984)]; *State* v. *Falcone,* 191 Conn. 12, 23, 463 A.2d 558 (1983); the severity of the misconduct; see *United States* v. *Modica,* 663 F.2d 1173, 1181 (2d Cir. 1981); the frequency of the misconduct; *State* v. *Couture* [194 Conn. 530, 562–63, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985)]; see *State* v. *Doehrer,* [200 Conn. 642, 654, 513 A.2d 58 (1986)]; *State* v. *Palmer,* [196 Conn. 157, 163, 491 A.2d 1075 (1985)]; the centrality of the misconduct to the critical issues in the case; *Hawthorne* v. *United States,* 476 A.2d 164, 172 (D.C. App. 1984); the strength of the curative measures adopted; *United States* v. *Modica,* supra; *Harris* v. *United States,* 402 F.2d 656, 657 n.1 (D.C. Cir. 1968); *State* v. *Doehrer,* supra; and the strength of the state's case. See *United States* v. *Modica,* supra; *State* v. *Couture,* supra, 564; *State* v. *Glenn,* [194 Conn. 483, 492, 481 A.2d 741 (1984)]." *State* v. *Williams,* supra, 540.

Our review of the entire trial convinces us that the state's attorney's remark, although improper, did not deprive the defendant of a fair trial. The improper comment was isolated and confined to two consecutive sentences in the state's rebuttal argument. Compare *State* v. *Falcone,* supra (prosecutor's remarks small part of argument and point not emphasized), with *State* v. *Williams,* supra (repeated and strident pattern of misconduct); see also *United States* v. *Modica,* supra, 1181

(remarks were minor aberrations in a prolonged trial). The severity of the misconduct here was undercut by defense counsel's immediate and emphatic denial of the factual basis of the state's attorney's improper comment. Additionally, the court's instructions given in its charge to the jury, to the effect that the jury's verdict should be based only on the evidence, that the statements of counsel during closing argument and during the entire trial did not constitute evidence, and that any beliefs that counsel have are not evidence, further served to diminish any impact which the improper remark may have had on the jury. *Darden* v. *Wainwright,* 477 U.S. 168, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986). These instructions focused the jury's attention on the evidence and away from any consideration of the personal views of counsel.[4] Finally, the case against the defendant was sufficiently strong "that the jury in all probability would have found him guilty even absent the improper remarks." *United States* v. *Modica,* supra, 1182.

### B

The defendant also claims that the state's attorney, during rebuttal argument, improperly appealed to the emotions of the jurors by repeatedly equating the defendant with a wolf. The defendant, in his closing argument, related a tale to the jury in which the character of the wolf referred to the culpable party.[5] There-

---

[4] We note that the defendant requested that the court give the following curative instruction to the jury: "[Defense counsel] surely believe[s] that the defendant is [not] guilty." The requested instruction would have been as improper as the prosecutor's comment because it would have focused the jury on the personal opinion of counsel. For this reason, the court's denial of the requested instruction was proper.

[5] The tale that defense counsel related to the jury, in order to illustrate his point that the jury's initial impression of the evidence might prove misleading, may be summarized as follows: An individual returns home after hunting and is greeted by his dog who appears downcast. Upon entering his child's room, he finds blood all over an overturned bed. The child does not respond to his father's call. After concluding that the dog harmed the

after, the state's attorney incorporated the wolf reference several times in his rebuttal argument in a manner similar to the defendant's.

The state argues that the defendant's claim is not reviewable because it has not been properly preserved for appellate review. We agree.

"The defendant 'took none of the appropriate measures to alert the trial court to a potential problem . . . .' *State* v. *Williams,* [supra, 535]. At trial, the defendant did not object to the remarks now complained of nor did he move for a mistrial on the basis of these remarks. The defendant concedes that this claim was not properly preserved for appeal, but nonetheless seeks review of this issue under the 'exceptional circumstances' doctrine of *State* v. *Evans,* [supra, 70], or the 'plain error' rule of Practice Book § 4185." *State* v. *Rodgers,* 207 Conn. 646, 653, 542 A.2d 1136 (1988).

"The record in this case does not adequately support a claim of a clear deprivation of the right to a fair trial. The challenged remarks did not rise to the level of character assassination and vitriolic personal attacks that we have held to constitute a denial of the constitutional due process right to a fair trial. We conclude, therefore, that the remarks of the prosecutor as set forth in the record do not constitute the 'exceptional circumstance' contemplated in *State* v. *Evans* to warrant review of these unpreserved claims. For similar reasons, we conclude that these remarks do not warrant review as plain error." Id., 654.

There is no error.

In this opinion the other judges concurred.

---

child, the individual kills the dog. He then hears the cry of his child and sees a wolf standing nearby. The individual realizes that it was the wolf, not his dog, that threatened his child; he slays the wolf. Thus, in the tale, the result of the individual's rush to judgment is that the wolf, the true culprit, initially escapes detection while the dog, the innocent party, suffers.