STATE OF CONNECTICUT *v.* WILLIE E. THOMPSON
(6656)

DUPONT, C. J., SPALLONE and NORCOTT, Js.

Argued December 7, 1988—decision released February 21, 1989

*John S. Pinney,* with whom, on the brief, was *Thomas E. Gaffey,* for the appellant (defendant).

*Mary H. Lesser,* deputy assistant state's attorney, with whom, on the brief, was *Richard Schatz,* former assistant state's attorney, for the appellee (state).

NORCOTT, J. The defendant appeals from a judgment of conviction of three counts of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4), three counts of unlawful restraint in the first degree in violation of General Statutes § 53a-95, one count of possession of a sawed-off shotgun in violation of General Statutes § 53a-211, and one count of burglary in the third degree in violation of General Statutes

§ 53a-103 (a).[1] On appeal the defendant raises three claims of instructional error: (1) that the trial court failed to follow the mandate of General Statutes § 54-84 (b) regarding the silence of the defendant; (2) that it unconstitutionally diluted the state's burden of proving guilt beyond a reasonable doubt in instructing the jury on circumstantial evidence; and (3) that it misled the jury in its instruction on the element of possession for the crime of possession of a sawed-off shotgun.

From the evidence presented at trial, the jury reasonably could have found the following facts. On January 23, 1983, at about 8:30 p.m., a robbery occurred at Scooby's Restaurant in Groton. On that evening, Michael Thompson, Diana Sliker and Gretchen Crowley were employed there. While they were in the process of closing the restaurant, two masked men entered; one of the men carried a shotgun. The intruders forced the three employees to lie on the floor and bound their hands with coat hangers and their feet with an extension cord. After they searched Thompson's back pockets but found no money, they emptied the safe and the cash register, took the money from the other employees' pocketbooks and fled.

On February 7, 1983, detectives from the Waterford police department interviewed the defendant. During this interview, the defendant confessed to his participation in the Scooby's Restaurant robbery. He told the police that he was wearing a ski mask and gloves and was carrying a shotgun. The defendant also told the police that he and his accomplice then went to New London where they split up the money and that, thereafter, he arranged for someone to dispose of the shotgun.

---

[1] The defendant also was convicted of being a persistent dangerous felony offender in violation of General Statutes § 53a-40 (a).

In addition to the defendant's confession, two other witnesses, Dinah McNair, the defendant's niece, and Susan Pemberton, the defendant's former girlfriend, testified that the defendant had told them that he had committed the robbery. The jury also heard additional testimony regarding the shotgun. Pamela Delome, the defendant's neighbor, testified that the defendant had kept the shotgun under her mattress during January, 1983, and that she often had seen him leave and return with it. She also testified that the defendant had kept masks, ammunition, knives and dynamite in her apartment. Arthur Hewitt, the defendant's brother-in-law, testified that he had found the shotgun under his bed on February 6, 1983, and had thrown it in the Thames River, where the police located it on February 22, 1983. Michael Gomez, another brother-in-law of the defendant, identified the shotgun as his but testified that it had not been sawed off the last time he saw it. He also testified that in January he had hired the defendant to work for him and that he had discovered the shotgun missing sometime in February. The defendant presented no evidence at trial.

The defendant first contends that the trial court erred in its instructions to the jury by failing to follow the mandate of General Statutes § 54-84 (b) regarding the silence of the defendant. We first note that at trial the defendant did not request an instruction regarding his failure to testify and did not take exception to this portion of the charge. The defendant claims review under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), and under the plain error doctrine. Practice Book § 4185.

Our Supreme Court has repeatedly held that "a claim of trial court noncompliance with § 54-84 (b) is reviewable on appeal even though the defendant, as in this case, did not at trial except to the charge as given. The statute 'serves to effectuate the fundamental constitutional right of a defendant not to testify in his crimi-

nal trial'; *State* v. *Sinclair,* 197 Conn. 574, 582, 500 A.2d 539 (1985); and it is 'plain error for a trial judge not to comply with [its] mandate.' *State* v. *Tatem,* 194 Conn. 594, 595–96, 483 A.2d 1087 (1984)." *State* v. *Townsend,* 206 Conn. 621, 625, 539 A.2d 114 (1988). Accordingly, we will afford this claim plain error review.

General Statutes § 54-84 (b) provides in pertinent part that the trial court "shall instruct the jury that they may draw no unfavorable inferences from the accused's failure to testify." The trial court gave the following instruction to the jury regarding the defendant's decision not to testify: "Now an accused person is not obliged to take the witness stand, or to offer any evidence in his own behalf, and no inference of guilt may be drawn from the failure of the defendant to testify in this case." The defendant argues that the trial court's use of the words "of guilt" allowed the jury to speculate on the defendant's bad character or possible criminal record even though the instruction prohibited an inference of guilt.[2] We disagree.

Judicial noncompliance with § 54-84 (b) does not automatically warrant a reversal and a new trial. *State* v. *Townsend,* supra. A minor departure from the language of the statute is not reversible error. *State* v. *Thurman,* 10 Conn. App. 302, 309, 523 A.2d 891 (1987). "We must decide, on a case by case basis, whether a trial court's

---

[2] In *State* v. *Boulware,* 183 Conn. 444, 441 A.2d 1 (1981), our Supreme Court held harmless an instruction almost identical to that in the present case. The trial court in *Boulware* had charged that the jury "may not draw any unfavorable inference as to [the defendant's] guilt merely because of his failure or refusal to testify." The Supreme Court rejected the defendant's 54-84 (b) claim, the substance of which mirrored the 54-84 (b) claim before us, and concluded that "the defendant has viewed the instruction in a far too technical manner. . . . We think a reasonable juror hearing this instruction within the context of the entire charge would naturally assume that the defendant's silence formed no part in the case." (Citations omitted.) Id., 447–48.

failure fully to comply with the statute was harmless. *State* v. *Cobb,* 199 Conn. 322, 324–25, 507 A.2d 457 (1986). Because such an error is of constitutional dimension, '[t]he applicable test requires the state to prove beyond a reasonable doubt that, from the viewpoint of the charge as a whole, there is no reasonable possibility that the jury was misled.' *State* v. *Sinclair,* supra, 584; *State* v. *Cobb,* supra, 325; *State* v. *Tatem,* supra, 599. In the present context, the state must show that the charge as given conveyed to the jury the substantive meaning of the statutory requirement. *State* v. *Cobb,* supra; *State* v. *Marra,* 195 Conn. 421, 443, 489 A.2d 350 (1985)." *State* v. *Townsend,* supra, 625–26.

In the present case, the trial court repeatedly instructed the jury that the state alone bore the burden of proving the defendant's guilt beyond a reasonable doubt and that the defendant was presumed innocent until proven guilty and stood before the jury "free from any bias, prejudice, or burden arising from his position as the defendant." Additionally, the trial court specifically instructed the jury that it was the state's evidence alone which must establish the defendant's guilt. We also note that the court's pretrial instructions were replete with references to the aforementioned principles of law concerning the presumption of innocence and thereby served to emphasize the court's later jury instructions.

We find that the court's deviation from the statutory language of General Statutes § 54-84 (b) was not the type that, in the context of the entire charge, would mislead the jurors by suggesting that it was permissible for them to consider the defendant's silence in deciding the case; see *State* v. *Townsend,* supra; *State* v. *Tatem,* supra. The charge, as given, conveyed to the jury the substantive meaning of General Statutes § 54-84 (b). Accordingly, we find that the defendant's claim must fail.

The defendant's second claim of instructional error is that the trial court's "more probable than not" reference concerning circumstantial evidence impermissibly diluted the state's burden that it prove every essential element of the crime charged beyond a reasonable doubt.[3] Again, the defendant took no exception to the court's instruction, but we routinely grant *Evans* review to these claims that involve the fundamental constitutional right that the state establish each element of the defendant's guilt beyond a reasonable doubt. See *State* v. *Mercer,* 208 Conn. 52, 72, 544 A.2d 611 (1988); *State* v. *Flinter,* 16 Conn. App. 402, 405, 548 A.2d 1 (1988).

It is axiomatic that an instruction that dilutes the state's burden to prove each and every element of the crime charged is unconstitutional. *Sandstrom* v. *Montana,* 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979); *State* v. *Gabriel,* 192 Conn. 405, 413, 473 A.2d 300 (1984). Jury instructions similar to the one before us in which the trial court instructs the jury that it may infer facts based on a "more probable than not" standard are erroneous. See *State* v. *Hufford,* 205 Conn. 386, 407, 533 A.2d 866 (1987); *State* v. *Whelan,* 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986); see also *State* v. *DeMatteo,* 13 Conn. App. 596, 538 A.2d 1068

---

[3] The trial court's full instruction on the use of circumstantial evidence was as follows: "Now, with reference to circumstantial evidence, proof beyond a reasonable doubt does not mean that you must have direct evidence supporting a fact. You may apply the rule of circumstantial evidence. This rule involves the offering of evidence of facts from which you are asked to infer the existence of another fact, or a set of facts. Such an inference may be made provided two elements in the application of this rule are satisfied. First, that the fact from which you are asked to draw the inference has itself been proven beyond a reasonable doubt; and second, that the inference asked to be drawn is not only logical and reasonable, but is strong enough so that you can find that it is more probable than not that the fact to be inferred is true."

(1988). "We have repeatedly disapproved of the use of the more probable than not standard in instructions on circumstantial evidence. [*State* v. *Gonzalez,* 205 Conn. 673, 692, 535 A.2d 345 (1987)]; *State* v. *Robinson,* 204 Conn. 207, 211, 527 A.2d 694 (1987). In resolving the further question of whether such instructions were harmful beyond a reasonable doubt, we have applied a bifurcated standard of review. ' " 'Where the principal factual issue at trial is intent, which is typically proven by circumstantial evidence, "we will closely scrutinize the court's instructions" on circumstantial evidence, in isolation from the remainder of the charge, to determine whether the court misled the jury as to the state's burden of proof.' *State* v. *Robinson,* [supra, 210]. . . ." ' *State* v. *Gonzalez,* [supra,] 690–91; *State* v. *McDonough,* 205 Conn. 352, 358, 533 A.2d 857 (1987), cert. denied, 485 U.S. 906, 108 S. Ct. 1079, 99 L. Ed. 2d 238 (1988). Otherwise, we consider the erroneous instruction in the context of the charge as a whole to determine whether it is 'reasonably possible that the jury was misled.' *State* v. *Gonzalez,* [supra]; *State* v. *McDonough,* supra." *State* v. *Mercer,* supra, 73.

In this case, the principal factual issue at trial was identity, and the direct evidence relative to the issue was strongly against the defendant. There was, in fact, very little circumstantial evidence for the jury to consider. The most significant part of the direct evidence was the defendant's own confession regarding every element of the crimes with which he was charged. This confession to the police was abundantly supported by other corroborative evidence including the testimony of the defendant's relatives, a neighbor and a former girlfriend. See *State* v. *Arnold,* 201 Conn. 276, 286–87, 514 A.2d 330 (1986).

Because the issue before us concerns the element of identity, we have reviewed the challenged language in the context of the entire charge and note that the court

instructed the jury (1) on the presumption of innocence, (2) on the state's burden to prove the defendant's guilt beyond a reasonable doubt, an instruction that the court repeated at least fifteen times, (3) on the definition of "reasonable doubt," and (4) on the state's burden to prove each element of the crimes charged beyond a reasonable doubt. Additionally, the trial court instructed the jurors that they were to find all the "facts" proven beyond a reasonable doubt. In light of this entire charge, we are satisfied that it was not reasonably possible that the jury was misled by the challenged language and that the use of this language, while erroneous, was not harmful beyond a reasonable doubt.

The defendant also contends that the trial court erred in its jury instruction regarding the element of possession for the crime of possession of a sawed-off shotgun, a violation of General Statutes § 53a-211.[4] The defendant once again seeks *Evans* review of this claim because he took no exception to the challenged instruction at trial.

The defendant argues that the court's instruction on accessory culpability misled the jury as to the proof of possession required to convict the defendant of possession of a sawed-off shotgun and thus abridged his due process rights under the sixth and fourteenth amendments to the United States constitution and the constitution of Connecticut, article first, § 8.[5] "The due process clause of the fourteenth amendment protects an accused against conviction except upon proof beyond

[4] General Statutes § 53a-211 provides in pertinent part: "A person is guilty of possession of a sawed-off shotgun . . . when he owns, controls or possesses any sawed-off shotgun that has a barrel of less than eighteen inches or an overall length of less than twenty-six inches . . . ."

[5] We note that the defendant failed to brief the basis of his state constitutional argument and accordingly we consider it abandoned. See *State* v. *Hernandez*, 204 Conn. 377, 394 n.9, 528 A.2d 794 (1987); *State* v. *Magnano*, 204 Conn. 259, 265 n.4, 528 A.2d 760 (1987).

a reasonable doubt of every fact necessary to constitute the crime with which he is charged. *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); see *Mullaney* v. *Wilbur*, 421 U.S. 684, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975); *State* v. *Anonymous*, 179 Conn. 516, 519, 427 A.2d 403 (1980); *State* v. *Griffin*, 175 Conn. 155, 162, 397 A.2d 89 (1978); 1 Wharton, Criminal Evidence (13th Ed.) § 10." *State* v. *Gabriel*, 192 Conn. 405, 413–14, 473 A.2d 300 (1984). Because the defendant's claim involves the fundamental rights of an accused to a fair trial and for the state to prove each element of the crimes charged, we will review his claim under *Evans*. *State* v. *Vessichio*, 197 Conn. 644, 648–49, 500 A.2d 1311 (1985), cert. denied, 475 U.S. 1122, 106 S. Ct. 1642, 90 L. Ed. 2d 187 (1986); *State* v. *Payne*, 12 Conn. App. 408, 411–12, 530 A.2d 1110 (1987).

In its general instructions, the court stated in pertinent part that "if two or more persons participate in a crime they are equally responsible." The court related this instruction on accessory liability to "any of the crimes alleged in the information" and gave as examples of its instruction the following: "The defendant would be guilty of such crime although, for example, he was the one [sic] who actually took the items stolen, or the one who actually tied up the store employees."[6] Subsequent to its general instructions, the court gave very specific instructions regarding the shotgun

---

[6] The text of the court's general instructions on accessory liability reads in pertinent part as follows: "Accordingly, if you find that the defendant was one of the two robbers allegedly involved in the offenses which are before you, and further, that the defendant did anything to aid, to assist, to inspire, or to encourage the commission of any of the crimes alleged in the information with the necessary intent, the defendant would be guilty of such crime although, for example, he was the one [sic] who actually took the items stolen, or the one who actually tied up the store employees."

charge.[7] The defendant contends that the court's general instruction misled the jury into believing that they could convict the defendant of possession of a sawed-off shotgun as an accessory, even if he himself did not have possession of it.

To begin our analysis of this claim, we note that although the transcript indicates that the court omit-

[7] The trial court's specific instructions regarding "possession of a sawed-off shotgun" read as follows: "The seventh count of the second substituted information charges the defendant with the crime of possession of a sawed-off shotgun in violation of Section 53a-211 of the General Statutes, and reads as follows: 'And said Attorney further charges that at the Town of Groton, on or about the 23rd day of January, 1983, the said WILLIE E. THOMPSON, on Long Hill Road, did commit the crime of illegal possession of a sawed-off shotgun, in violation of Section 53a-211 of said Statutes.'

"Section 53a-211 of the Penal Code provides in pertinent part as follows: 'A person is guilty of possession of a sawed-off shotgun . . . when he owns, controls or possesses any sawed-off shotgun that has a barrel of less than eighteen inches or an overall length of less than twenty-six inches.'

"The first element of this offense is that the defendant knowingly possessed a sawed-off shotgun. An act is done knowingly if it is done voluntarily and purposefully. Knowledge may be inferred from facts and circumstances in this case.

"The second element is possession of a shotgun, sawed-off shotgun. The law recognizes two kinds of possession: First, actual possession and second, constructive possession. A person who knowingly has direct physical control over a thing at a given time is then in actual possession of it. An example of actual possession, is I possess this pen, which is in my hand.

"Now, it's the claim of the State, of course, that the defendant had actual possession of a sawed-off shotgun, State's Exhibit 2, which will be given to you, on January 23, 1983, on or about Scooby's Restaurant.

"The third element of this offense is that the shotgun possessed, and I will remind you of the definition of shotgun which I gave to you before, must have a barrel of less than eighteen inches or an overall length of less than twenty-six inches. The State has offered evidence that the barrel of the shotgun, State's Exhibit 2, which it claims the defendant possessed, is fourteen inches long, and that the overall length of the shotgun is twenty-five inches.

"If you find it proven beyond a reasonable doubt that the defendant possessed a sawed-off shotgun he would be guilty of a violation of this statute as alleged in the seventh count of the substituted information. On the other hand, if you do not find it proven beyond a reasonable doubt that the accused possessed a sawed-off shotgun then he would not be guilty of the seventh count of the information."

ted the word "not" from the challenged sentence, it is clear from the context and from the instruction as a whole that the court conveyed to the jury the idea that the defendant would be guilty of a crime even if his fellow perpetrator was the one who actually took the money or tied up the employees. Although this instruction was improper, under the circumstances present here, we conclude that the error was harmless. " 'An erroneous instruction, even of constitutional dimension, is harmless if, viewed in the context of the charge as a whole, there is no reasonable possibility that the jury was misled. *State* v. *Hines,* 187 Conn. 199, 209, 445 A.2d 314 (1982).' " *State* v. *Tatem,* supra, 599, quoting *State* v. *Carrione,* 188 Conn. 681, 685, 453 A.2d 1137 (1982), cert denied, 460 U.S. 1084, 103 S. Ct. 1775, 76 L. Ed. 2d 347 (1983).

We first note that the court immediately followed the challenged language with examples relative only to the crimes of robbery and unlawful restraint. We find it significant that the court did not include the crime of possession of a sawed-off shotgun in its examples of accessory culpability and that the improper language was included in the court's general rather than in its specific instructions regarding the separate crimes charged. When the court did give specific instructions regarding possession of the shotgun, it did so clearly, definitively and correctly. The court told the jury of the concepts of "actual" and "constructive" possession and then, after defining the concepts, stressed that, in the present case, the state needed to prove the defendant's "actual" possession. Furthermore, we note that the jury heard the totality of these instructions against the background of the state's very strong case of the defendant's actual possession of the shotgun.

From our review of the entire charge, we are satisfied that the court's use of the challenged language was

adequately clarified and corrected by subsequent language in its charge. We therefore conclude that the error was harmless because it was not reasonably possible that the jury was misled into believing that they could convict the defendant as an accessory to possession of a shotgun. We are convinced that the jury convicted the defendant based on the state's proof beyond a reasonable doubt of his actual possession of that weapon.

There is no error.

In this opinion the other judges concurred.